**Barbara SHORTRIDGE, Appellant,**

**v.**

**Morris RICE, Appellee.**

**No. 94–CA–001822–MR.**

Court of Appeals of Kentucky.

March 15, 1996.

Ned Pillersdorf, Joseph Lane, Pillersdorf, Derossett & Barrett, Prestonsburg, for Appellant.

Benjamin J. Hays, Elizabeth M. Linville, Hays and Hays, Winchester, for Appellee.

Before HUDDLESTON, KNOPF and MILLER, JJ.

HUDDLESTON, Judge.

This case involves a collision between two automobiles at a Prestonsburg, Kentucky, intersection. The drivers, Barbara Shortridge and Morris Rice, both claim to have had a green light as they approached the intersection from opposite directions. The collision occurred when Shortridge attempted to make a left turn across Rice's path at the intersection.

Both Shortridge and Christy Thorpe, a witness to the accident, testified that on January 11, 1993, at about 9:00 p.m., Rice entered the intersection driving, without lights, at an excessive rate of speed. While Rice admits that his headlights were not working after the accident, he claims that prior to the collision he was using his headlights and was driving between twenty and twenty-five miles per hour. Rice attempted to undermine the testimony of Shortridge and Thorpe by pointing out that both admitted that they did not see Rice's vehicle before it entered the intersection. Nevertheless, Rice admitted that he had consumed alcohol prior to the accident. Confirming Rice's intoxication, a police officer testified that Rice had slurred speech, failed three sobriety tests and was trying to put a Budweiser box behind his seat when police arrived at the scene of the accident.

Alleging negligence and wanton conduct, Shortridge brought this personal injury action against Rice. The issues of liability and damages were submitted to a jury. Apportioning fault equally between Rice and Shortridge, the jury returned a verdict awarding Shortridge $5,000.00 of her alleged $18,000.00 medical expenses, but did not award any damages for pain and suffering. After Shortridge's attorney made repeated requests for reconsideration of the zero award for pain and suffering, the court ordered the jury to reconsider the issue. Thereafter, the jury awarded Shortridge $1,000.00 for pain and suffering.[1] Shortridge appeals claiming that the jury verdict was defective and that the court erred in refusing to instruct the jury on punitive damages and the impairment of her ability to earn money in the future.

Pointing to the fact that the jury initially awarded no damages for pain and suffering, Shortridge contends that the jury verdict was defective. After insisting[2] that the jury be sent back to reconsider the pain and suffering issue, Shortridge cites on appeal the well-established rule that the appropriate remedy for a verdict that is inadequate and contrary to the evidence lies in a motion for new trial[3] rather than reconsider-

1. The $6,000.00 total verdict for Shortridge was reduced to $3,000.00 by the court as a result of the jury's determination that she was 50 percent at fault.

2. Before ultimately agreeing to order the jury to reconsider the award for pain and suffering, the trial court refused Shortridge's request that he do so three times.

3. Ky.R.Civ.Proc. (CR) 59.01 identifies "[e]xcessive or inadequate damages, appearing to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court" as one of the grounds for granting a new trial.

ation of the verdict. *Cooper v. Fultz,* Ky., 812 S.W.2d 497 (1991); *McVey v. Berman,* Ky.App., 836 S.W.2d 445 (1992); *Spalding v. Shinkle,* Ky.App., 774 S.W.2d 465 (1989); *Hazelwood v. Beauchamp,* Ky.App., 766 S.W.2d 439 (1989). Specifically, Shortridge quotes *Cooper,* 812 S.W.2d at 499, where the Supreme Court said:

> It is indeed a "booby trap" to send back a jury which has flatly decided that the claimant's pain and suffering is worth nothing to replace the "–0–" with a dollar amount. If "–0–" is inadequate, this forces the lawyer seeking to represent a litigant who has just been abused by an inadequate jury verdict to further jeopardize his client's interest by asking that this hostile jury reconsider. *Erasing the zero and replacing it with a few dollars will not correct the inadequacy.* The first verdict as completed should be received and should be subject to a motion for a new trial which should be granted unless there is countervailing evidence such that the jury's verdict, taken as a whole, withstands the test of inadequacy. (Emphasis supplied.)

While we agree wholeheartedly with *Cooper,* we cannot overlook Shortridge's insistence that the trial court order reconsideration. We will not fault the court for complying with that insistent request.

As noted, after reconsidering the pain and suffering issue, the jury increased the award from zero to $1,000.00. Shortridge claims that the increased pain and suffering award was inadequate and that the court should have accordingly granted her motion for a new trial. This is not a case where the jury simply erased the zero and replaced it with "a few dollars" which, as the Supreme Court pointed out in *Cooper,* 812 S.W.2d at 500, would not correct the inadequacy. Rather than simply awarding "a few dollars" after reconsideration, the jury awarded Shortridge $1,000.00, one-fifth of the unchallenged $5,000.00 award of special damages. This case is, therefore, distinguishable from *Cooper* and cases such as *Hazelwood,* 766 S.W.2d at 439, where the jury only awarded $250.00 after reconsideration. Under these circumstances, we review the trial court's refusal to grant a new trial based upon the alleged inadequacy as we would if the jury had originally awarded $1,000.00.

■ Our standard of review on such issues was described in *McVey,* 836 S.W.2d at 448:

> [O]ur only function in reviewing the denial of a motion for new trial is to decide whether the trial judge abused his discretion. The decision of the trial judge is presumptively correct. Thus, we will not reverse the decision of a trial court unless that decision is clearly erroneous. (Citations omitted.)

In a similar case, *Davidson v. Vogler,* Ky., 507 S.W.2d 160, 162 (1974), the highest court of this state said:

> If the jury accepted the appellant's testimony as to the severity and duration of the pain which [she] endured, the $1,000.00 awarded for pain and suffering would appear to be inadequate. However, *the jury was not bound to accept as the absolute truth the testimony of either the appellant or of [her] doctor relating to appellant's claimed pain and suffering* . . . . (Citations omitted.) (Emphasis supplied.)

"[T]he jury had the opportunity to observe [Shortridge] give [her] testimony and to hear first-hand all of the other evidence in arriving at [its] verdict." *Id.* Shortridge then "squarely presented [the issue] to the trial judge, who [had also] heard and considered the evidence." *See Davis v. Graviss,* Ky., 672 S.W.2d 928, 933 (1984). Absent clear error, we will not substitute our judgment for that of the trial judge. *Id.* "In any event, we cannot say that the jury's award [of $1,000.00 for pain and suffering] was so small and in variance with the facts of the case as to indicate that the verdict was influenced by passion and prejudice." *Davidson,* 507 S.W.2d at 162. There was considerable evidence presented to the jury that Shortridge did not sustain a permanent injury and may not have sustained any significant injuries at all. While Shortridge claims to have suffered from severe blood clots in her legs, medical testimony was presented suggesting that she may not have even had blood clots.

■ We do agree, however, with Shortridge's contention that the court erred in refusing to instruct the jury that it could award punitive damages. "A party plaintiff is entitled to have [her] theory of the case submitted to the jury if there is *any evidence to sustain it.*" *Clark v. Hauck Mfg. Co.,* Ky., 910 S.W.2d 247, 250 (1995). (Emphasis supplied.) Accordingly, if there was *any evidence* to support an award of punitive damages, Shortridge had a right to have the jury instructed on the option to award punitive damages. *See generally Wittmer v. Jones,* Ky., 864 S.W.2d 885, 890 (1993).

We look to Ky.Rev.Stat. (KRS) 411.184 and 411.186 for guidance in those cases in which punitive damages are sought. KRS 411.184(2) provides that "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." Shortridge alleges that she is entitled to punitive damages on a theory of "malice." KRS 411.184(1)(c) defines "malice" as:

> [E]ither conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff or conduct that is carried out by the defendant both with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm. (Emphasis supplied.)

While neither this Court nor the Supreme Court has thus far interpreted the current version of KRS 411.184 to cover injuries caused by a drunk driver, we believe that the statute does encompass such situations. *See generally* Peter G. Guthrie, Annot., *Intoxication of Automobile Driver as Basis for Awarding Punitive Damages,* 65 A.L.R.3d 656 (1975). Prior to the enactment of the current statute, the highest court of this state held that "evidence of drinking, speeding, and reckless driving" was sufficient "to justify the trial court's submitting the issue of punitive damages to the jury." *Cooper v. Barth,* Ky., 464 S.W.2d 233, 235 (1971). The current statutory provision is not inconsistent with this precedent. Several other jur-

isdictions have also held voluntary intoxication of a driver sufficient to support the imposition of an award of punitive damages in personal injury actions. *See Owens v. Anderson,* 631 So.2d 1313 (La.Ct.App.1994); *Cabe v. Lunich,* 70 Ohio St.3d 598, 640 N.E.2d 159 (1994); *Flockhart v. Wyant,* 467 N.W.2d 473 (S.D.1991); *Perry v. Dewey,* 1995 WL 422660 (Tenn.Ct.App.1995); *Huffman v. Love,* 245 Va. 311, 427 S.E.2d 357 (Va.1993). *See generally* Guthrie, Annot., *Intoxication of Automobile Driver as Basis for Awarding Punitive Damages, supra.*

Evidence that an individual was driving under the influence undoubtedly shows "a flagrant indifference to the rights of [other drivers and pedestrians]...." KRS 411.184. In *Cooper,* 464 S.W.2d at 235, the Court expressly stated that "evidence of drinking, speeding, and reckless driving [could indicate] a wanton and reckless disregard for the lives or safety of other persons." Rice, however, claims that the statutory requirement that the driver have a "subjective awareness that such conduct will result in human death or bodily harm" is lacking in such situations. We disagree. While this Court has not specifically interpreted the meaning of the "subjective awareness" requirement since the statute was enacted in 1988, a similar issue was addressed in *Huddleston v. Hughes,* Ky. App., 843 S.W.2d 901 (1992). Discussing punitive damages in general, *Huddleston,* 843 S.W.2d at 905, interpreted the terms "willful and malicious" as used in the recreational use statute, KRS 411.190(6). As *Huddleston,* 843 S.W.2d at 906, points out, "malice" is not "used exclusively to characterize a deliberate intent to do harm...." Quoting *Black's Law Dictionary* 956–957 (6th ed. 1990), *Huddleston* further says that a willful and malicious act " 'may involve merely a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally.' " (Emphasis omitted.) *Id.* While Rice is correct that the statute establishes a "subjective" rather than an "objective" standard, we believe it to be significant that KRS 411.184 only requires an "awareness" of the possible consequences. The statute does not require a deliberate or specific intent that the "con-

duct ... result in human death or bodily harm." KRS 411.184. The "awareness" requirement can be satisfied by a showing of mere "consciousness" or cognizance of potential danger. *See Random House Dictionary of the English Language* 103 (1966).

■ We believe "there was sufficient evidence to justify ... submitting the issue of punitive damages to the jury." *See Cooper,* 464 S.W.2d at 235. Beyond Rice's own admission that he had been drinking alcohol earlier in the afternoon, there was evidence that Rice had slurred speech, failed three field sobriety tests and was leaving a bar speeding without using headlights at night. In addition, the police officer's testimony that Rice was trying to hide a Budweiser box behind his seat exemplifies an "awareness" of wrongdoing. While the jury had no obligation to accept all of this evidence as true, it was sufficient to support an award of punitive damages. Based upon this evidence, the jury could easily believe that Rice was acting "with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct [would] result in human death or bodily harm." KRS 411.184.

■ Shortridge additionally contends that the court erred in failing to give a permanent injury instruction. There is some debate over whether this issue has been preserved for appeal because Shortridge confuses her request for a "permanent injury instruction" with a request for an instruction on "impaired future earning power." At trial, Shortridge's attorney specifically stated Shortridge would not ask for an instruction on future lost earnings. Whichever instruction Shortridge is now complaining of, we find no error. Although there was evidence that Shortridge had not reached maximum medical improvement, she had returned to work at the time of trial and there was no indication that her injuries were permanent. Thus, the trial court was correct in finding that the evidence was insufficient to justify instructing the jury on either permanent injuries or impaired future earning power.

■ In light of our determination that Shortridge was wrongfully deprived of a jury instruction on punitive damages, we must consider the appropriateness of a retrial on the issue of punitive damages alone. Ky. R.Civ.Proc. (CR) 59.01 specifically authorizes a new trial for only "part of the issues" and "[t]he Kentucky Supreme Court has noted its strong preference for limited retrials on the issue of damages alone." 7 Kurt A. Philipps, Jr., *Kentucky Practice,* CR 59.01, cmt. 4 (5th ed. 1995). "[W]here a distinct and severable issue is to be decided, a trial on that issue alone is appropriate unless such a retrial would result in injustice." *Deutsch v. Shein,* Ky., 597 S.W.2d 141, 146 (1980). *See also Smith v. McMillan,* Ky., 841 S.W.2d 172, 175 (1992); *Turfway Park Racing Ass'n v. Griffin,* Ky., 834 S.W.2d 667, 672 (1992); *Nolan v. Spears,* Ky., 432 S.W.2d 425, 428 (1968). The Supreme Court has "held that when the issues of negligence, causation and damages [have] been litigated and the only issue on appeal [is] damages ... [,] retrial of damages alone [is] sufficient." *Turfway Park,* 834 S.W.2d at 672. Since the issue of punitive damages is "distinct and severable" from the issue of liability, which has not been challenged on appeal, and we foresee no manifest injustice, retrial will be limited to the issue whether punitive damages should be awarded. *Deutsch,* 597 S.W.2d at 146. On remand, "the parties should be allowed to present evidence" relevant to the issue of punitive damages so that the jury may "achieve a just and informed verdict." *Turfway Park,* 834 S.W.2d at 673.

The $1,000.00 award for pain and suffering is affirmed, but the case is remanded to Floyd Circuit Court for a limited retrial on the issue of punitive damages.

All concur.