Sherri KINNEY, Appellant,

v.

Barry D. BUTCHER, Appellee.

No. 2002–CA–002150–MR.

Court of Appeals of Kentucky.

March 12, 2004.

James L. Hamilton, Hamilton & Stevens, PLLC, Pikeville, KY, for appellant.

Sandra Spurgeon, Spurgeon & Tinker, PSC, Paintsville, KY, for appellee.

Before GUIDUGLI, MINTON, and VANMETER, Judges.

## OPINION

MINTON, Judge.

Sherri Kinney appeals following a judgment entered on a jury's verdict awarding her $2,500.00 in pain and suffering damages following an auto accident for which Barry Butcher conceded liability. Kinney argues that the circuit court erred in not instructing the jury on punitive damages and not granting a new trial following alleged misconduct by Butcher's counsel during closing argument.

On March 23, 2000, Butcher was traveling home on a two-lane road when he attempted to pass a slow moving van. The van accelerated as Butcher was attempting to pass, which prevented him from returning to his lane of travel. Butcher applied his brakes in an attempt to avoid a collision with Kinney's vehicle but went into a slide. Butcher's vehicle collided with Kinney's behind the driver's door.

Butcher conceded liability for the accident. At trial, the court sustained a motion by Kinney for directed verdict as to medical expenses and lost wages. Kinney was awarded $4,911.27 in medical costs and $480.00 in lost wages, for a total directed verdict of $5,391.27. The jury awarded Kinney $2,500.00 for past pain and suffering but no money for future medical expenses, impairment of ability to earn money in the future, or future pain and suffering.

Kinney's first argument on appeal is that the circuit court erred by not instructing the jury on punitive damages. Her argument is premised on the collision having occurred in her lane of travel and in a no-passing zone. These facts necessarily implicate a violation of traffic statutes by Butcher. Kinney also alleges that Butcher was traveling 55 miles per hour in a 45 mile per hour zone, though the evidence was conflicting on that point, and the jury did not make a specific finding of fact.

Kinney's theory, though not expressed, appears to be that evidence of a violation of traffic statutes automatically triggers the imposition of punitive damages. Butcher premises his argument regarding the availability of punitive damages on Kentucky Revised Statutes (KRS) 411.184(1). However, on brief, neither side addresses *Williams v. Wilson*,[1] which held the subjective awareness standard of KRS 411.184(1)(c) to be unconstitutional. Specifically, the *Williams* court held that it was a violation of the jural rights doctrine to elevate the standard for the availability of punitive damages above what it had been under the common law that existed at the time of the adoption of the current constitution.[2] Rather, "the well established common law standard for awarding punitive damages was [and is]

---

1. Ky., 972 S.W.2d 260 (1998).

2. *Id.* at 265–269.

gross negligence." [3]

■ While the courts of the Commonwealth have not always used precisely the same language in defining gross negligence, the prevailing understanding defines gross negligence as a "wanton or reckless disregard for the safety of other persons." [4] It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation. [5]

Here, the jury was presented with the facts that (1) Butcher did not return to his lane of travel upon entering a no-passing zone, and (2) he may have been traveling 55 miles per hour in a 45 mile per hour zone. Though we have no specific finding that Butcher was speeding, we will assume for the purposes of this argument that he was.

We agree with the trial court's assessment of the circumstances of this case to the effect that traveling at a possible speed of ten miles per hour in excess of the posted speed limit and failing to complete a pass before entering a no-passing zone constitute nothing more than ordinary negligence. Were we to accept Kinney's argument that it amounts to wanton or reckless disregard for the safety of others, it would effectively eliminate the distinction between ordinary and gross negligence in the context of automobile accidents. Nearly all auto accidents are the result of negligent conduct, though few are

sufficiently reckless as to amount to gross negligence, authorizing punitive damages. We are of the opinion that punitive damages should be reserved for truly gross negligence as seen in cases such as *Shortridge v. Rice,* [6] *Stewart v. Estate of Cooper,* [7] and *Phelps v. Louisville Water Company.* [8] In *Shortridge* and *Stewart,* the defendant tortfeasors were driving while intoxicated; and, in *Phelps,* the jury was presented with eighteen instances where Louisville Water Co. misrepresented the dangerous nature of a highway condition, violated its own safety policies, and disregarded the Manual on Uniform Traffic Control Devices, all of which evidenced a conscious disregard for public safety.

■ Having rejected Kinney's claim for punitive damages, we now address her contention that a new trial should have been granted based on a statement by Butcher's counsel during closing argument. Specifically, Butcher's counsel, in reference to Kinney's medical expert, stated "I was totally shocked by Dr. Fannin's testimony." Kinney argues that this statement amounted to a personal opinion on the witness's credibility.

However, a review of the record reveals that Butcher's counsel was commenting on what she considered to be the inconsistencies between Dr. Fannin's testimony and Kinney's claims of injury and demands for relief. Specifically, Butcher's counsel was attempting to explain her interpretation of the evidence as being that Dr. Fannin's testimony that Kinney suffered no serious

3. *Id.* at 264. *See also Phelps v. Louisville Water Co.,* Ky., 103 S.W.3d 46, 52 (2003).

4. *Phelps, supra,* at 52.

5. *Id.*

6. Ky.App., 929 S.W.2d 194 (1996).

7. Ky., 102 S.W.3d 913 (2003). It should be noted that although punitive damages were

not available in *Stewart,* the reason therefor was that the tortfeasor had died. The Supreme Court held that punitive damages may only be recovered against the individual tortfeasor who was grossly negligent, not his estate.

8. *Supra,* n. 3.

injury undermined Kinney's demands for large sums of compensation. The trial court, however, recognized the improper nature of this commentary and sustained Kinney's objection and admonished the jury accordingly. As this Court stated in *King v. Grecco:* [9]

> It is ordinarily presumed that an admonition controls the jury and removes the prejudice which brought about the admonition.[10] A mistrial is appropriate only where the record reveals "a manifest necessity for such an action or an urgent or real necessity." [11] [Kinney], we believe, has not overcome the presumption that the admonition cured any resulting prejudice.... In the absence of evidence to the contrary, we must assume the admonition achieved the desired effect. A trial court has discretion in deciding whether to declare a mistrial, and its decision should not be disturbed absent an abuse of discretion.[12]

Very simply, we are not convinced that the circuit court's admonition failed to cure any prejudice resulting from Butcher's counsel's statements in closing argument. Thus, we cannot say the court abused its discretion.

Kinney's third argument is that Butcher's attempt to introduce a videotape of Kinney square dancing was so prejudicial that a new trial should be granted. On direct examination, Kinney testified extensively regarding her activities as a square dancer. On cross-examination, Butcher's counsel attempted to introduce a videotape made of Kinney's square dancing group as a demonstrative illustration relating to Kinney's direct testimony. However, Kinney's counsel objected to the introduction of the tape because it had not been produced during discovery. The circuit court sustained the objection, and the tape was not admitted into evidence.

Kinney argues that the court's admonition to the jury could not cure the prejudice allegedly caused by the reference to the videotape. However, we are not cited to any point during the trial when Kinney moved for a mistrial in addition to the admonition. In light of such failure of preservation, Kinney cannot now complain that the circuit court's remedy was ineffective.[13]

Although Kinney presents it as a separate item, her assertion that the circuit court erred by failing to grant a new trial is nothing more than a restatement of her other arguments. As such, it need not be addressed separately.

For the foregoing reasons, the judgment of Pike Circuit Court is affirmed.

ALL CONCUR.

9. Ky.App., 111 S.W.3d 877, 884 (2002) (internal footnotes renumbered).

10. *Neeley v. Commonwealth*, Ky., 591 S.W.2d 366 (1979); *Carpenter v. Commonwealth*, Ky., 256 S.W.2d 509 (1953).

11. *Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672 (1985).

12. *Jones v. Commonwealth*, Ky.App., 662 S.W.2d 483 (1983).

13. Even if Kinney had moved for a mistrial, based on our analysis from *King v. Grecco, supra,* we are not convinced that Kinney could demonstrate lingering prejudice following the circuit court's admonition.