**ESTATE OF Evan EMBRY, et al, Plaintiffs**

v.

**GEO TRANSPORTATION OF INDIANA, INC., et al, Defendants.**

**Civil Action No. 2002–172.**

United States District Court, E.D. Kentucky, Northern Division.

March 21, 2007.

---

Lucinda C. Shirooni, Philip Taliaferro, Taliaferro, Mehling, Shirooni, Carran & Keys, William C. Oldfield, Cobb & Oldfield, Covington, KY, Robert E. Blau, Jolly, Blau, Kriege & Turner, PLLC, Cold Spring, KY, for Plaintiffs.

Andrew N. Moore, Landrum & Shouse LLP, Lexington, KY, Edward R. Goldman, Rendigs, Fry, Kiely & Dennis, LLP, Cincinnati, OH, for Defendants.

### OPINION AND ORDER

BERTELSMAN, District Judge.

This is a wrongful death action in which federal jurisdiction is based on diversity. The case is presently before the court on defendants' motion for new trial or, in the alternative, for remittitur (Doc. # 296); motion for judgment as a matter of law, new trial and remittitur (Doc. # 298); and motions for summary judgment on the issue of punitive damages (Doc. ## 322, 324). These motions have been extensively briefed, and the court heard oral argument on the punitive damages issues on January 29, 2007.

Having thoroughly reviewed these motions, the court now issues the following opinion and order.

### Factual and Procedural Background

This case arises out of an automobile-truck collision that occurred on June 6, 2002.

Norma Young, Amber Young, Evan Embry, and Brandon Perry were passengers in a minivan driven by Heather McNay southbound on I–75 in Grant County, Kentucky. A tractor-trailer driven by defendant Kenneth Chandler was traveling in the right-hand lane of northbound I–75. Chandler was speaking with another truck driver on his CB radio; he then moved into the left lane to pass that truck, returned to the far right lane, and thanked the driver over the radio for allowing him to pass.

Approximately 15–20 seconds after safely passing this other truck, Chandler's vehicle suddenly veered left across the northbound lanes, crossed the median, and entered the far southbound oncoming lane of traffic. Chandler did not signal or apply his brakes during this time. Chandler's truck collided with the minivan driven by Heather McNay (age 25), resulting in her death as well as the deaths of her mother, Norma Young (age 58), and son, Evan Embry (age 10 months). Young's daughter, Amber Young, and Amber's boyfriend, Brandon Perry, were injured.

Upon awaking in his truck immediately after the collision, Chandler told the police that he had taken a sip of coffee from a travel mug and choked. He coughed up some of the coffee onto his shirt and continued choking. Chandler said that he then developed "tunnel vision" and lost consciousness, and that he remembered nothing thereafter until waking. Chandler was not charged with any traffic violations as a result of the accident.

Chandler was taken to the hospital immediately following the accident. Medical examinations ruled out any underlying neurological conditions as the cause for what the emergency room physician termed a "near syncopal episode."

The tractor-trailer driven by Chandler was owned by Dairy Farmers of America, Inc. ("DFA"). DFA transports milk and other dairy products as a trucking opera-

tion cooperative. In the mid–1980s, DFA had begun outsourcing its internal trucking fleet by leasing its tractors and trailers to third-party operators. The operators, in turn, leased the trucks back to DFA, along with drivers. One of these operators was Cabool Carriers ("Cabool").

Chandler was hired by Cabool in 2000. In 2001, Cabool discontinued its business operations. DFA thereafter transferred certain equipment and drivers, including Chandler, to another independent trucking operator, Geo Transportation of Indiana.

Through an equipment lease dated July 1, 2001, DFA leased the tractor-trailer in question to Geo and, through a "Fleet Operator Lease" of the same date, the vehicle, along with Chandler, was leased back to DFA.

On July 12, 2002, plaintiffs filed this action asserting three wrongful death claims, a personal injury claim, and four loss of consortium claims. Ultimately named as defendants were Chandler, Geo Transportation of Indiana, Inc., Dairy Farmers of America, Inc., and DFA Logistics. Two of the wrongful death claims, a personal injury claim, and one loss of consortium claim were settled. The remaining plaintiffs were: the estate of Evan Embry (wrongful death); Edmond Embry, father of Evan Embry (loss of child's consortium); and Shalynn and Joshua McNay, children of Heather McNay (loss of parental consortium).

In the summer of 2005, this court granted plaintiffs' motion for partial summary judgment as to liability on the grounds that Chandler had been negligent *per se* in choking on coffee while driving, in violation of his statutory duty to operate his vehicle safely. The court also rejected defendants' "blackout" defense as a matter of law. (Doc. ## 162, 164)[1] The court bifurcated the compensatory and punitive damage claims, setting the former for trial and the latter for further discovery and briefing.

A jury trial on plaintiffs' claims for compensatory damages was held on January 23 and 25–26, 2006. The jury returned a verdict of compensatory damages as follows: (a) $1,830,000.00 to the Estate of Evan Embry, the 10–month old decedent, for the destruction of his power to earn money,; (b) $1,279.00 to the Estate of Evan Embry for his funeral expenses; (c) $1,475,000.00 to Edmond Embry, Evan's father, for the loss of Evan's affection and companionship[2]; (d) $2,700,000.00 to Shalynn McNay (age six at the time of the accident) for the loss of affection and companionship of her mother, Heather McNay[3]; and (e) $2,700,000.00 to Joshua McNay (age three at the time of the accident) for the loss of affection and companionship of his mother, Heather McNay. (Doc. ## 262, 273) The court deferred entering a final judgment pending resolution of outstanding and prospective motions.

Following this trial, briefing was completed on defendant Geo's motion for partial summary judgment. Geo there argued that, although Chandler was its common law employee at the time of this accident, DFA was Chandler's statutory employer pursuant to Interstate Commerce Commission ("ICC") regulations and thus solely liable for his negligence. By order dated April 14, 2006, this court denied Geo's motion, holding that although DFA is statutorily liable for Chan-

**1.** See *Estate of Evan Embry v. GEO Transp. of Indiana, Inc.,* 395 F.Supp.2d 517, 520–21 (E.D.Ky.2005).

**2.** See Ky.Rev.Stat. Ann. § 411.135 (West 2006).

**3.** See *Giuliani v. Guiler,* 951 S.W.2d 318 (Ky. 1997) (recognizing cause of action for loss of parental consortium).

dler's negligence pursuant to the ICC regulations, Geo may nonetheless be jointly liable for Chandler's negligence under common law standards of control. (Doc. # 291)

Thereafter, the parties completed discovery on plaintiffs' claims for punitive damages, and defendants moved for summary judgment on those claims. All outstanding issues have now been fully briefed.

## ANALYSIS

### A. Post Trial Motions

#### 1. Prior Rulings

Defendants' post trial motions attack the compensatory damages verdict from several angles.[4] First, Geo and Chandler ask the court to reconsider and reverse its prior rulings on two issues: the availability of the "blackout" defense and the question of whether DFA should be solely liable for Chandler's negligence based on its role as the ICC statutory employer.

The court declines defendants' invitation. The court carefully considered the applicable authority on these questions when it made its original rulings. In their new motions, defendants present no additional facts or legal authority that warrant a different result.

#### 2. Loss of Consortium Verdicts

■ Second, defendants argue in support of their motion that the compensatory damage awards are against the weight of the evidence and excessive.[5]

All parties recognize that consortium claims, by their very nature, are means of compensating for imprecise, intangible losses. Who can quantify the effect of the loss of a spouse, a child or a parent? Nonetheless, juries are called upon to exercise their collective experience, consider the evidence, and place a value on such claims. The court's function in reviewing such a verdict is only to ensure that it is not unreasonable, excessive, or influenced by prejudice or bias. See Barnes, 201 F.3d at 820–21 (citations omitted); Conte v. Gen. Housewares Corp., 215 F.3d 628, 637 (6th Cir.2000). While "the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached." Conte, 215 F.3d at 637 (citation omitted).

Here, the jury heard testimony from friends and family about Heather McNay's relationship with her children, Joshua and Shalynn, who were three and six years old respectively at the time of the accident. The jury saw family photos and a videotape of Heather with her children, and it heard testimony from Shalynn regarding her feelings about the loss of her mother. The jury was then instructed to determine from this evidence an amount of money that would "fairly and reasonably compensate" each of the children "for the loss of the affection and companionship that [their] mother, Heather McNay, would have provided to [them] until [they] reached the age of 18." (Jury Instructions, Special Verdicts 4,5) (Doc. # 259)

4. Although the pending motions are not, strictly speaking, Rule 59 motions, since final judgment has not been entered, the parties have stipulated that they are to be treated as such.

5. Kentucky law governs these motions. See 12 James Wm. Moore, Moore's Federal Practice § 59.13[2][g][C] (3d ed. 2002 $ Supp. 2006). However, in actual application the federal and Kentucky standards are similar. See Barnes v. Owens–Corning Fiberglas Corp., 201 F.3d 815, 821 (6th Cir.2000). Cf. Owens–Corning Fiberglas Corp. v. Golightly, 976 S.W.2d 409, 414 (Ky.1998).

The amounts awarded here—$2.7 million to each child—while generous, are not so high as to lead the court to conclude that they are grossly excessive as a matter of law or otherwise influenced by passion or prejudice. The parties have cited to the court a variety of loss-of-parental-consortium verdicts rendered in Kentucky in the ten years since the cause of action became available in this jurisdiction, with verdicts ranging from $12,500 to $3 million.[6] The range of these verdicts alone illustrates the fact-specific nature of these claims and the differing values that reasonable juries may place on them. However, given the testimony here concerning the sudden loss of the mother of two young children, the court cannot say that the consortium awards to Joshua and Shalynn McNay are grossly excessive as a matter of law.

■ The court also finds unpersuasive defendants' argument that it was erroneous to admit the testimony of plaintiffs' expert psychiatrist, Dr. James Hawkins. In accord with the court's pretrial order on this issue, Dr. Hawkins's testimony was limited to discussing the psychological aspects of bereavement as a general matter, and it was made clear to the jury that he was not offering a diagnosis as to Joshua and Shalynn specifically. Moreover, on cross-examination, defendants elicited that Dr. Hawkins professes no expertise on subject of the effects of the loss of a parent on children. There is no evidence that this very generalized testimony had any impermissible effect on the jury's verdict.

■ Under similar reasoning, the court cannot say that the jury's award of $ 1,475,000 to Edmond Embry for the loss of the consortium of his 10–month old son

Evan is unreasonable or excessive so as to require a new trial or warrant a remittitur.

### 3. *Evan Embry—Wrongful Death Claim*

■ Defendants further argue that the jury's award of $1,830,000 to the estate of Even Embry for the destruction of his power to earn money is grossly excessive as a matter of law. The court does not agree.

Plaintiffs' expert economist, Dr. William T. Baldwin, testified to several different calculations that he performed to project Evan Embry's future income, based on scenarios including completion of only a high school degree, completion of some college courses, and attainment of a bachelor's degree. Dr. Baldwin's projected earnings for Evan Embry ranged from $1.9 to $4.2. million. While defendants cross-examined Dr. Baldwin, they did not call their own economist, Dr. Renas, to testify.

The jury determined that an award of $1.83 million would fairly and reasonably compensate Evan Embry's estate for the loss of his earning capacity. (Jury Instructions, Special Verdict 1) (Doc. # 259) Defendants argue that this award is excessive based on the limited education and modest incomes of Evan's parents. However, given that the amount awarded is less than Dr. Baldwin's lowest projection, the court cannot say that the jury's determination was unreasonable.

Finally, the court rejects defendants' argument that the court's failure to use their proffered instruction on compensatory damages renders the verdict suspect. The instructions used by the court, in the succinct style favored by Kentucky courts,

---

**6.** The court notes that the Supreme Court of Kentucky has granted discretionary review in *Sandoz Pharm. Corp. v. Gunderson,* Nos.2004–CA–001536–MR, 2004–CA–001537–MR, 2005 WL 2694816 (Ky.App. Oct.21, 2005), the case in which an award to two children of $3 million each for the loss of their mother was upheld on appeal.

adequately apprised the jury of the compensatory purpose of the different amounts that they were asked to award. *See generally Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 321–22 (6th Cir. 2007) (no error in refusing to give requested instruction where instruction is substantially covered by other delivered charges; appellate court will reverse only where instructions, viewed as a whole, were confusing, misleading, or prejudicial).

### B. Punitive Damages

#### 1. Applicable Legal Standards

Punitive damages are available under Kentucky law if a plaintiff proves by clear and convincing evidence that a defendant acted with oppression, fraud or malice. Ky.Rev.Stat. Ann. § 411.184(2) (West 2006). In addition, punitive damages may be awarded where "gross negligence" is shown. *Williams v. Wilson,* 972 S.W.2d 260, 262–65 (Ky.1998).

In discussing the "gross negligence" standard, the Kentucky Court of Appeals has stated:

> While the courts of the Commonwealth have not always used precisely the same language in defining gross negligence, the prevailing understanding defines gross negligence as a "wanton or reckless disregard for the safety of other persons." It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation.

*Kinney v. Butcher,* 131 S.W.3d 357, 359 (Ky.App.2004) (citation omitted).

In addition to these standards derived from Kentucky law, the United States Supreme Court has circumscribed the availability of punitive damages based upon principles of due process. Recently, the Supreme Court reiterated that "the Constitution imposes certain limits, in respect both to procedures for awarding punitive damages and to amounts forbidden as 'grossly excessive.'" *Philip Morris USA v. Williams,* —— U.S. ——, ——, 127 S.Ct. 1057, 1062, —— L.Ed.2d ——, —— (2007) (citations omitted). In *Williams,* for example, the Court held that the Due Process Clause forbids a state to use a punitive damages award to punish a defendant for injury inflicted on strangers to the litigation. *Id.* at 1063.

In reaching that conclusion, the Supreme Court drew on its decision in *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), in which the Court held that a state cannot punish a defendant for out-of-state conduct unless such conduct has "a nexus to the specific harm suffered by the plaintiff." *Id.* at 422, 123 S.Ct. 1513. The Court explained:

> A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. *A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business.*

*Id.* at 422–23, 123 S.Ct. 1513 (emphasis added).[7]

With these principles in mind, the court will examine the undisputed facts of record as they pertain to plaintiffs' claim for punitive damages.

---

**7.** The Supreme Court also noted in *State Farm* that where "substantial" compensatory damages are awarded based on non-economic injury to the plaintiff, the compensatory award may, in fact, already contain a punitive element. *Id.* at 426, 123 S.Ct. 1513. Here, the court notes that, although punitive damages are not available as a matter of law for the reasons discussed below, the compensatory damages awarded were substantial.

### 2. *Record Evidence as to Punitive Damages* [8]

■ The court has ruled that Kenneth Chandler was negligent *per se* in failing to control his vehicle and in crossing into oncoming traffic and striking the minivan driven by Heather McNay. However, it is undisputed that Chandler was not speeding, was not intoxicated, was not excessively fatigued, and was otherwise operating his truck safely immediately before this accident occurred. Regardless of Chandler's ordinary negligence in choking on the coffee, therefore, the court concludes as a matter of law that his conduct does not rise to the level of *gross* negligence so as to support an award of punitive damages under Kentucky law.

On this point, the court's discussion in *Turner v. Werner Enter., Inc.,* 442 F.Supp.2d 384 (E.D.Ky.2006) (Hood, C.J.), is instructive. There, the driver of a tractor-trailer fell asleep while driving on I–75 in Kentucky and struck a pickup truck occupied by plaintiffs. The defendant driver acknowledged that he was sleepy at the time of the accident but that he had decided to try to make it to the next truck stop. It also was undisputed that he was not speeding, was in the proper lane, and was not intoxicated. *Id.* at 386. Assuming that the driver could be found to have been negligent, the court nonetheless held as a matter of law that this evidence could not support a finding that the driver was grossly negligent as required for an award of punitive damages. *Id.* at 387.

The *Werner* court cited the Kentucky Court of Appeals decision in *Kinney v. Butcher,* 131 S.W.3d 357 (Ky.App.2004), which also involved a vehicle accident and in which the defendant driver was speeding and attempting to pass another car on a two-lane road in a no-passing zone. In affirming the trial court's refusal to give a punitive damages instruction, the *Kinney* court observed:

> We agree with the trial court's assessment of the circumstances of this case to the effect that traveling at a possible speed of ten miles per hour in excess of the posted speed limit and failing to complete a pass before entering a no-passing zone constitute nothing more than ordinary negligence. *Were we to accept Kinney's argument that it amounts to wanton or reckless disregard for the safety of others, it would effectively eliminate the distinction between ordinary and gross negligence in the context of automobile accidents. Nearly all auto accidents are the result of negligent conduct, though few are sufficiently reckless as to amount to gross negligence, authorizing punitive damages.*

*Id.* at 359 (emphasis added).

These observations apply equally here. To permit an award of punitive damages based on the mere negligent act of choking on coffee while driving would render meaningless the distinction between ordinary and gross negligence and make almost any negligent act committed while driving a basis for the imposition of punitive damages. Such a result would run contrary to the specific yet limited purposes that punitive damages are meant to serve. *See State Farm,* 538 U.S. at 419, 123 S.Ct. 1513 (noting that "punitive damages should only be awarded if the defendant's culpability, after having paid com-

---

8. As noted, in order to recover punitive damages under Kentucky law, plaintiffs bear the burden of proving their claim by "clear and convincing" evidence. Ky.Rev.Stat. Ann. § 411.184(2) (West 2006). Where a party bears a such a higher burden of proof, "that party must meet the same burden in resisting the summary judgment motion." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254–55, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

pensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence") (citing *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)).

■ Looking beyond the actual choking episode, plaintiffs assert in the alternative that Chandler's "course of conduct" prior to this accident provides a basis for punitive damages.

Specifically, plaintiffs offer voluminous evidence dating back as far as 1975 of various physical ailments and illnesses suffered by Chandler, such as neck and back problems; knee problems; smoking-related bronchitis; carpal tunnel syndrome; and obesity. They assert that Chandler fraudulently omitted various aspects of this medical history when he applied for his job with Cabool and when he submitted medical information in order to obtain a commercial driving license. Plaintiffs further allege that Geo and DFA were negligent in failing to discover Chandler's omissions and in retaining him as a driver.

Notwithstanding the extensive record developed regarding Chandler's medical history, a single salient point is undisputed: *none* of these alleged fraudulent acts or omissions occurred in Kentucky. Many took place in Ohio, some in Missouri, and some in Indiana. But none of the alleged culpable conduct[9] cited by plaintiffs—other than the tragic accident itself—took place in Kentucky.

Under *State Farm,* therefore, none of these acts or omissions by Chandler may serve as the basis for punitive damages in this action unless they have a "nexus to the specific harm suffered by the plaintiff[s]." *State Farm,* 538 U.S. at 422, 123 S.Ct. 1513.

Plaintiffs advocate a simple "but for" theory of the nexus requirement. They argue that Chandler would never have been driving his truck in Kentucky on the day in question but for the fact that he obtained his commercial driver's license, which he would never have obtained had he not fraudulently misrepresented his medical history.

This argument misses the mark. The fact that extra-territorial acts or omissions, even wrongful ones, result in a defendant being in a place where he otherwise would not have been—a place where he ultimately causes harm to another person—is insufficient to justify punitive damages where the extra-territorial conduct is independent of, and not proximately related to, the acts upon which liability is premised. *State Farm,* 538 U.S. at 422, 123 S.Ct. 1513.

The requirement of proximate rather than mere "but for" causation between the extraterritorial conduct and the plaintiff's injury is consistent with the purpose of punitive damages, which is to allow a state to punish and deter conduct that is of such nature that the tortfeasor, either intentionally or in a grossly negligent manner, exposes the plaintiff to harm that foreseeably flows from his conduct. *See BMW of North America, Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)

9. In addition to the medical history that plaintiffs recount, they also offer evidence that Chandler is a recovering alcoholic since 1992; that he was once convicted of disorderly conduct and intoxication (in 1990); that he was found at fault in an accident involving his personal vehicle (1999); and that he misrepresented his military history on an employment application. Yet none of this information is relevant to the issues in this case. To the contrary, it is reminiscent of the Supreme Court's caution against attempting to base a punitive award, not on conduct by the defendant that harmed the plaintiff, but rather on conduct that depicts the defendant as "unsavory." *See State Farm,* 538 U.S. at 423, 123 S.Ct. 1513.

(citations omitted). Absent some degree of foreseeability, no deterrent purpose would be served because a defendant who has no reason to suspect that his conduct would lead to the type of harm suffered by the plaintiff would not take such possible harm into account in structuring his conduct.

Here, it is undisputed on the material facts of record that this accident resulted from Chandler's incapacitation caused by his choking on coffee.[10] The court discerns no proximate "nexus" between this event in Kentucky and Chandler's extraterritorial failure to report accurately his whole medical history to his employers and to the doctors who, upon examining him in person, found him fit to hold a commercial driver's license. There is no medical evidence or expert opinion, rendered to any degree of medical certainty, that any of the conditions that Chandler allegedly failed to report had anything to do with a propensity to choke on coffee.

In contrast, such a nexus was found in the case involving the grounding of the *Exxon Valdez* in Prince William Sound, Alaska, in 1989. *See In re the Exxon Valdez*, 296 F.Supp.2d 1071 (D.Alaska 2004), *vacated and remanded on other grounds*, 472 F.3d 600 (9th Cir.2006). There, Exxon knew that the captain of its supertanker had a serious alcohol problem, it knew that he had relapsed following a stint in rehabilitation, and it also knew that he had in fact been drinking while in command of the ship. *Id.* at 1077. Nonetheless, Exxon continued to allow the captain to command the supertanker carrying hazardous cargo, and, while the captain was under the influence of alcohol and directing the operations of the *Exxon Valdez*, the ship ran aground and spilled approximately 11 million gallons of crude oil into Prince William Sound. *Id.* The court found a sufficient nexus, within the *State Farm* analysis, based on Exxon's express knowledge that the captain routinely drank while in command of his ship and the circumstances of the accident. *Id.* at 1093.

Similarly, in *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153 (Ky.2004), the Supreme Court of Kentucky found that evidence of Ford's sale of vehicles with defective transmissions outside of Kentucky was properly admitted under *State Farm* because the jury had found that the plaintiff's death was caused by the defective design of the transmission in his Ford truck, and the incidents thus "were of a similar nature." *Id.* at 157.

No such nexus is present here. There is no evidence that any of the medical information that Chandler failed to disclose made it foreseeable that he would choke on coffee while driving. Plaintiffs' experts opine generally only that, given Chandler's history of bronchitis and asthma, it was foreseeable that he would have "coughing spells." (Poore Depo. at 152) This is a far cry from evidence upon which a reasonable jury could conclude, by the clear and convincing standard, that Chandler was grossly negligent in not foreseeing that he would choke on coffee.[11]

In sum, there is simply no correlation between the omitted medical information and the mechanism by which this accident occurred.

**10.** The court finds immaterial the purported dispute over whether Chandler completely blacked out, nearly blacked out, had a "syncope" or "near syncope" episode, etc. The evidence is uncontradicted that Chandler choked on coffee and thereafter was unable to control his truck, leading him to cross into oncoming traffic. Plaintiffs have adduced no evidence, only speculation, that there was any other cause of this accident.

**11.** Chandler had passed his most recent Department of Transportation physical on August 9, 2000.

Illustrative of this point is the testimony of Dr. David Bracken, the emergency room physician who examined Chandler immediately after the accident. Dr. Bracken was asked by plaintiffs' counsel during this litigation to go back through Chandler's complete medical history, as compiled during discovery. In deposition, Dr. Bracken testified:

Q. And what was the purpose for reviewing those, what was [counsel] asking you to do?

A. He was asking me to assess Mr. Chandler's prior medical history to determine if there was anything else that could have predisposed him to this choking episode.

Q. Was there anything that you found?

A. No.

Q. So this was, if it happened the way Mr. Chandler says, he choked on coffee, blacked out, this is something from your review of the records was not, he was not predisposed, was not something that he had a red flag that this was going to happen; is that fair to say?

A. Yes.

Q. So from what you looked at, if his employer had those medical records, there's nothing in there that would say to the employer, hey, this is going to happen, be prepared Ken Chandler could possibly blackout and go across the road?

A. Correct.

(Bracken Depo. At 9–10). In summary, Dr. Bracken stated:

A. . . . I, after going through his history several times with him and evaluating him, felt that the accident, I could find no evidence the accident was caused by anything other than what he described, which was taking a swig of coffee and it impeding his airway and him having *a choking spell like everybody in this room likely has had at least once in their life* and losing control of his truck due to that.

(*Id.* at 49–50) (emphasis added).

In conclusion, the circumstances of this accident do not meet the stringent test for punitive damages under Kentucky law, nor does the pre-accident extraterritorial conduct satisfy the constitutional nexus requirement. Punitive damages are thus unavailable as a matter of law. Given the above ruling, the court need not reach the parties' other arguments.

Therefore, having carefully considered this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that: (1) defendants' motion for new trial (Doc. # 296) and motion for judgment as a matter of law (Doc. # 298) be, and are hereby, **DENIED**; (2) defendants' motions for summary judgment as to punitive damages (Doc. ## 322, 324) be, and are hereby, **GRANTED**; and (3) a judgment based on the verdict of the jury shall enter concurrently herewith.