Maxwell GERSH, Appellant,

v.

Samantha BOWMAN, Appellee.

No. 2006–CA–001566–MR.

Court of Appeals of Kentucky.

Oct. 5, 2007.

Griffin Terry Sumner, Jason Renzelmann, Louisville, KY, for appellant.

Chadwick N. Gardner, Louisville, KY, for appellee.

Before MOORE and THOMPSON, Judges; GRAVES,[1] Senior Judge.

## OPINION

MOORE, Judge.

Maxwell Gersh appeals the Jefferson Circuit Court's judgment against him in this personal injury action stemming from an automobile accident in which Gersh was the driver and his passenger, Samantha Bowman, was seriously injured. Following a jury trial, damages for Bowman's past and future medical expenses, pain and suffering, and impairment of her power to work and earn money, as well as punitive damages, were assessed against Gersh. After a careful review of the record, we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The accident at issue occurred on February 13, 2004. Gersh was driving the car in which Bowman and their mutual friend, Michael McLaurine, were passengers. They were driving on Tucker Station Road in Jefferson County, Kentucky, and their intended destination was Manual High School, where they were students. The accident occurred in the early morning hours, when it was still dark. Gersh lost control of the car while traveling at speeds exceeding the posted limits on a sharp curve in the road.

Before arriving at the curve in the road, McLaurine, apparently concerned that Gersh was speeding, warned Gersh about the curve by saying "you know there's a curve up ahead, right?" Gersh responded by stating "yeah, I got it." The speed limit on Tucker Station Road is twenty-five miles per hour. However, the speed limit for that particular curve is only fifteen miles per hour.

Henry Cease, an accident reconstructionist and retired Kentucky State Police Commander, reviewed the evidence and testified at trial regarding his opinion of the speed that Gersh was driving around the curve. Cease attested that Gersh was driving at least forty-nine miles per hour in the curve, i.e., a minimum of twenty-four miles per hour over the speed limit for the road and at least thirty-four miles per hour over the speed limit for the curve. Gersh contended that he applied his brakes while in the curve. Cease testified that, even though Gersh was braking while driving around the curve, he nevertheless traveled fifty-four feet on the road, followed by fifty-seven feet through a yard, then hit a culvert and "launched" the car into the air, traveling airborne another

---

1. Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

forty feet before hitting another concrete culvert.

As a result of the accident, Bowman suffered a "laceration on [her] face, and the bones in [her] nose were shattered, [her] right cheek bone was fractured, the orbit of [her] right eye socket was fractured, and there were three ... broken vertebrae." Bowman had seven surgeries between February 2004 and March 2006, and the evidence supports that she is expected to have at least two more. She took pain medication and antibiotics for several months after the incident. Bowman missed two months of school and during that time, a tutor came to her house once a week to instruct her. Her grade point average dropped because she received a grade lower than she usually received in one or two of her classes. For example, in her World Civilization class, she received a grade of a "D," when she usually received an "A" or a "B" in that class. Bowman testified that she has had difficulty coping with her injuries and resultant hardships; therefore, she was treated by a therapist to help her with her depression and the stress she experienced as a result of the accident.

Bowman initiated this civil action by filing her complaint against Gersh in Jefferson Circuit Court, seeking compensatory and punitive damages based on her allegation that Gersh acted in a grossly negligent manner in his operation of the automobile. Gersh moved for partial summary judgment on the issue of punitive damages. He argued that his conduct did not amount to gross negligence, which is the standard for instructing the jury on a punitive damages claim. The circuit court denied Gersh's motion and noted that the court would "again consider at the conclusion of trial proof whether the plaintiff has presented sufficient evidence to justify submitting the punitive damage claim to the jury."

Prior to trial, the parties submitted proposed jury instructions. Gersh's proposed jury instructions included, *inter alia,* an instruction for pain and suffering damages, and provided that the amount of such damages to be awarded was "not to exceed $____." Presumably, Gersh intended the circuit court judge to fill in the blank regarding the amount that this damage award was not to exceed.

Before the initiation of trial, Gersh stipulated that he was legally liable for the accident because his car was the only car involved and he was the driver of that vehicle. Accordingly, only damages were at issue at the trial.

At the close of Bowman's case, Gersh moved for a directed verdict on the punitive damages issue. The court denied his motion. The jury instructions included that the amount of future medical expenses awarded could not exceed $43,185.81; the amount of damages for the impairment of Bowman's power to work and earn money was not to exceed $906,260.00; and the amount of damages for her pain and suffering and lost enjoyment of life was not to exceed $2,000,000.00; and an instruction for punitive damages was given with no limit as to the damages which could be awarded. Gersh made a general objection to the jury instructions and objected specifically to the punitive damages instruction.

The jury returned a verdict in favor of Bowman and awarded $43,185.81 in future medical expenses; $250,000.00 for the impairment of Bowman's power to work and earn money; $2,000,000.00 for her pain and suffering and lost enjoyment of life; and $100,000.00 in punitive damages. The circuit court accordingly entered judgment against Gersh.

Gersh moved for a new trial pursuant to CR[2] 59. He argued that the damages awarded were excessive and that they "appear to have been given under the influence of passion or prejudice and in disregard of the evidence." He also asserted that the jury should not have been permitted "to hear evidence relating to a claim of punitive damages, nor should it have been precluded from hearing evidence of Gersh's voluntary payments of Plaintiff's medical bills." Bowman opposed the motion, and the circuit court denied Gersh's motion for a new trial.

Gersh timely filed his notice of appeal. On appeal, Gersh raises the following claims: (1) the circuit court erred when it denied his motion for partial summary judgment concerning Bowman's punitive damages claim, and the resulting introduction of highly prejudicial evidence that was related only to that claim requires reversal of the entire jury verdict; and (2) the jury's damages award for Bowman's pain and suffering is excessive and should be reversed as a product of the jury's passion and prejudice.

## II. CLAIM CONCERNING DENIAL OF MOTION FOR SUMMARY JUDGMENT ON PUNITIVE DAMAGES ISSUE[3]

### A. STANDARD OF REVIEW

■ Gersh first argues that the circuit court erred in denying his motion for partial summary judgment concerning the punitive damages claim and the resulting introduction of highly prejudicial evidence that pertained only to that claim requires reversal of the entire jury verdict. The denial of a motion for summary judgment

"is not reviewable on appeal from a final judgment where the question is whether there exists a genuine issue of material fact." *Transp. Cabinet, Bureau of Highways, Commonwealth of Kentucky v. Leneave*, 751 S.W.2d 36, 37 (Ky.App.1988). However, an exception to this rule is

> where: (1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom. Then, and only then, is the motion for summary judgment properly reviewable on appeal.

*Id.* Further, "once the trial begins, the underlying purpose of the summary judgment expires and all matters of fact and law procedurally merge into the trial phase, subject to in-trial motions for directed verdict or dismissal and post-judgment motions for new trial...." *Id.* at 38. In the present case, the facts were not in dispute, the circuit court denied Gersh's motion for partial summary judgment based on a matter of law, and the court subsequently denied Gersh's motion for a directed verdict and entered final judgment in the case. Accordingly, the standard of review we apply is that applicable to a denial of a motion for a directed verdict.

■ The standard of review of a circuit court's denial of a motion for a directed verdict is as follows:

> Upon review of the evidence supporting a judgment entered upon a jury verdict, the role of an appellate court is limited to determining whether the trial court erred in failing to grant the motion for

---

2. Kentucky Rule of Civil Procedure.

3. We pause to note that both parties have cited to unpublished cases in their briefs which do not meet the standard for citation to unpublished cases set forth in CR 76.28(4)(c). Accordingly, these cases have not been considered by the Court in rendering this Opinion.

directed verdict. All evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact. The prevailing party is entitled to all reasonable inferences which may be drawn from the evidence. Upon completion of such an evidentiary review, the appellate court must determine whether the verdict rendered is palpably or flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice.

*Brooks v. Lexington–Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 797–98 (Ky.2004) (internal quotation marks and citation omitted).

## B. ANALYSIS

██ In support of this claim, Gersh first asserts that the evidence presented by Bowman failed to demonstrate that his actions amounted to gross negligence as a matter of law. His conduct must constitute gross negligence in order to award punitive damages. *See Kinney v. Butcher*, 131 S.W.3d 357, 358–59 (Ky.App.2004). "Gross negligence" is a "wanton or reckless disregard for the safety of other persons." *Id.* at 359 (internal quotation marks and citation omitted). "It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation." *Id.*

Gersh contends that, pursuant to *Kinney*, his act of speeding cannot, as a matter of law, constitute "gross negligence." He relies on the language in *Kinney*, at 359, that "[n]early all auto accidents are the result of negligent conduct, though few are sufficiently reckless as to amount to gross negligence, authorizing punitive damages." We wholly agree with this statement of the law. In *Kinney*, this Court found that "traveling at a possible speed of ten miles per hour in excess of the posted speed limit and failing to complete a pass before entering a no-passing zone constitute nothing more than ordinary negligence." *Id.*

Despite Gersh's contention, we find the present case highly distinguishable from the facts in *Kinney* and most auto accidents. In the present case, Gersh was traveling at least twenty-four miles per hour over the posted speed limit for the road, and at least thirty-four miles per hour more than the speed limit for the curve, with two passengers in his vehicle. Additionally, it was dark outside at the time of the accident. Gersh was warned about the approaching sharp curve while speeding by one of his passengers, McLaurine, who said "you know there's a curve up ahead, right?" In response to this forewarning, Gersh replied "yeah, I got it," implying that he knew he was approaching a sharp curve and/or that he heard McLaurine's warning about the curve. Had Gersh been traveling alone going thirty-four miles over the speed limit on an interstate highway we might conclude he was only negligent if he had an automobile accident and injured someone. But, in the case at hand, he had two passengers in the car and disregarded their safety while recklessly traveling at excessive speeds on a curvy road. Due to these factors, we find that the present case is distinguishable from *Kinney*. Thus, the circuit court did not err in denying Mr. Gersh's motion for a directed verdict and motion for summary judgment.

██ Gersh next argues that Bowman's assertion that he "concealed" his misconduct through statements, deposition testimony, and discovery responses, may not

form a basis for punitive damages. Gersh raised this issue in the circuit court and, thus, it is preserved for appellate review. Regarding punitive damages, KRS 411.186 provides as follows:

(1) In any civil action where claims for punitive damages are included, the jury ... shall determine concurrently with all other issues presented, whether punitive damages may be assessed.

(2) If the trier of fact determines that punitive damages should be awarded, the trier of fact shall then assess the sum of punitive damages. In determining the amount of punitive damages to be assessed, the trier of fact should consider the following factors:

(a) The likelihood at the relevant time that serious harm would arise from the defendant's misconduct;

(b) The degree of the defendant's awareness of that likelihood;

(c) The profitability of the misconduct to the defendant;

(d) The duration of the misconduct and any concealment of it by the defendant; and

(a) Any actions by the defendant to remedy the misconduct once it became known to the defendant.

(3) KRS 411.184 and this section are applicable to all cases in which punitive damages are sought.

■ "[A]cts of concealment can give rise to punitive damages 'only if the concealment itself caused damages independently of those flowing from the wrongful act attempted to be concealed.' " *Hardaway Mgmt. Co. v. Southerland,* 977 S.W.2d 910, 916–17 (Ky.1998).

■ Thus, the general rule is "that fraud is actionable only if it results in damage to the complainant...." *Id.* at 917 (citing *Graham v. John R. Watts & Son,* 238 Ky. 96, 36 S.W.2d 859 (1931), 37 C.J.S.,

*Fraud* §§ 50, 51 (1997)). Bowman did not sustain any separate and distinct damages as a result of Gersh's alleged concealment regarding discovery issues. Accordingly, it was error for the trial court to allow any testimony regarding it.

■ Unlike the *Hardaway* case, wherein the punitive damages instruction was premised wholly on an allegation of concealment, in the case at hand, concealment was only one aspect of the punitive damages instruction. "[I]f there was *any* evidence to support an award of punitive damages, [a plaintiff has] a right to have the jury instructed on the option to award punitive damages." *Shortridge v. Rice,* 929 S.W.2d 194, 197 (Ky.App.1996) (citing *Wittmer v. Jones,* 864 S.W.2d 885, 890 (Ky.1993)). Because there was evidence to support a finding of gross recklessness in the manner in which Gersh was operating his vehicle and the resulting seriousness of the injuries suffered by Bowman, we cannot say that the award of $100,000.00 in punitive damages was flagrantly against the evidence, or that it appears to be based on passion or prejudice. This jury was allowed to return unlimited damages yet only awarded $100,000.00.

Finally, in support of his argument against punitive damages, Gersh contends that the submission of Bowman's punitive damages claim to the jury tainted the jury's compensatory damages award, thus requiring the entire damages verdict to be vacated and remanded. We disagree. Bowman suffered serious injuries as a result of the accident. She has endured seven surgeries and is likely to have at least two more surgeries in the future. As discussed *supra,* there was an abundance of evidence to support an award of punitive damages in this case. Therefore, Bowman had the right to have the jury instructed on the option of awarding punitive dam-

ages. The evidence was more than sufficient to independently support the compensatory damages, even if she had not made a punitive damages claim.

To the extent that Gersh alleges that the evidence supporting Bowman's punitive damages claim tainted the jury's compensatory damages award, that part of the claim will be analyzed with Gersh's second appellate claim in the following paragraphs.

## III. CLAIM CONCERNING JURY'S AWARD FOR PAIN AND SUFFERING

Gersh contends that the jury's compensatory damages award was tainted by the evidence supporting Bowman's punitive damages claim, and that the jury's award for pain and suffering was, therefore, excessive, and should be reversed because it was the result of the jury's passion and prejudice. Gersh raised this claim in the trial court in his CR 59 motion for a new trial.

### A. STANDARD OF REVIEW

 When a party contends that a jury's award of damages is excessive, "the trial court is charged with the responsibility of deciding whether the jury's award appears to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court." *Burgess v. Taylor,* 44 S.W.3d 806, 813 (Ky.App.2001) (internal quotation marks and citation omitted). On appeal from the trial court's decision concerning excessiveness of a damages award, this court does not step

> into the shoes of the trial court to inspect the actions of the jury from his perspective. [Rather], the appellate court reviews only the actions of the trial judge ... to determine if his actions constituted an error of law. There

is no error of law unless the trial judge is said to have abused his discretion and thereby rendered his decision clearly erroneous.

*Id.* We will not "substitute our judgment on excessiveness ... for [the trial court's] unless clearly erroneous." *Id.* (internal quotation marks and citation omitted).

### B. ANALYSIS

 To the extent that Gersh contends the jury's $2,000,000.00 damages award for pain and suffering was excessive, we note that the circuit court's instructions to the jury provided that any award for pain and suffering should not exceed $2,000,000.00, which was the amount that the jury ultimately awarded. Gersh made a general objection to the jury instructions and a specific objection to the punitive damages instruction. However, he failed to specifically object to the instruction concerning pain and suffering damages, including the provision in the instruction that such damages should not exceed $2,000,000.00. "[A] general objection without specification is insufficient to preserve the [alleged] error." *Id.* at 814. Furthermore, "[a]n objection to a jury instruction raised for the first time in a motion for a new trial is not timely and will not be considered by this Court." *Id.* Therefore, Gersh's claim that the jury's damages award for Bowman's pain and suffering is excessive was not preserved for appellate review, because he failed to specifically object to the "not to exceed $2,000,000.00" provision and the jury did, in fact, award $2,000,000.00.

 Regardless, even if this issue was preserved, the circuit court's decision concerning Gersh's allegation that the pain and suffering award was the result of the jury's passion and prejudice is not clearly erroneous. Bowman has endured fractures to her nose, cheekbone, orbit of her

right eye socket, and back. By March 2006, she had undergone seven surgeries, with more expected. Bowman took pain medication and antibiotics for several months after the accident and missed school for two months. She has had to see a therapist to help her cope with her depression and the stress she experienced as a result of the wreck. Even now she must be careful of what she lifts due to her back pain. At her deposition, Bowman testified that when she wants to read something, she has to hold the reading material in a certain place or above her eye level because she suffered from double vision in certain parts of her field of vision. The jury believed that this young woman has suffered terribly and will continue to do so in the future. Thus, based on this evidence, we find that the circuit court did not abuse its discretion in determining that the jury's award for pain and suffering was not influenced by passion or prejudice resulting from the introduction of evidence in support of Bowman's punitive damages claim. *See generally Burgess,* 44 S.W.3d at 813.

Accordingly, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.