**ROADWAY EXPRESS, INC., Appellant,**

v.

**DON STOHLMAN AND ASSOCIATES, INC., Appellee.**

Court of Appeals of Kentucky.

Oct. 18, 1968.

Rehearing Denied Feb. 7, 1969.

Joseph E. Stopher, A. J. Deindoerfer, C. McChord Carrico, Jr., Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellant.

Herbert H. Monsky, Brian D. Schaefer, Louisville, for appellee.

NOLAN CARTER, Special Commissioner.

This action for damages brought by appellee, Don Stohlman and Associates, Inc., against appellant, Roadway Express, Inc., arises out of the following facts.

Appellee is engaged in the business of rendering consulting services to managerial and industrial clients. To advertise itself

and its services, appellee rents space at "trade fair" conventions where it sets up a booth giving the name and location of appellee and the type of services it renders, such as industrial engineering, the setting of rates, production controls, routing work, floor work, clerical procedures, and organizational studies. One or more representatives of appellee are stationed in the booth to pass out written material to interested persons, to answer questions, and generally to promote and advertise appellee.

An annual trade fair called the "Needle Trade Exhibit" was to be held at Charlotte, North Carolina, on September 10, 11 and 12, 1965. Appellee had maintained a booth at this fair for several years previous to 1965, and it proposed to have a booth at the 1965 exhibit. Accordingly, appellee caused its booth which it had used in 1964 to be refurbished by Designs Unlimited, of Louisville, Kentucky. Designs Unlimited then packed the booth for shipment to Charlotte in five crates, four small ones, and one large crate, weighing about six hundred pounds. At the direction of appellee, the five crates were delivered to appellant with instructions that they must be delivered to appellee's agent in Charlotte by September 4, 1965. Appellant accepted the shipment. Across the face of the bill of lading there was written, "Must arrive by September 4."

The four small crates were delivered to North American Van Lines, agent for appellee, in Charlotte, in time for the fair, but the large crate was not delivered. The large crate contained the back wall of the exhibit and written material to be passed out to interested persons. A search was made for this crate but it was not found. Appellee then made efforts to erect and did succeed in erecting a makeshift booth.

Appellee's president, Mr. Stohlman, testified that in order to get the attention of the many people who attended the fair, it was necessary to have an attractive booth which would catch their eyes; that he had caused a sign to be placed in his makeshift booth reciting, "We are lost, our apologies, our main display lost in shipment," and that "when people went by our booth they would all sort of laugh or smile and went right on."

Over objection of appellant, appellee was permitted to introduce in evidence the following figures showing a decrease in income for the two months after the exhibit:

| Fiscal Year | For the 2 months before the show | For the 2 months after the show | Increase | Decrease |
|---|---|---|---|---|
| 63–64 | 2,755.00 | 8,431.00 | 5,476.00 | |
| 64–65 | 15,040.00 | 18,521.00 | 3,481.00 | |
| 65–66 | 13,731.66 | 6,925.00 | | 6,806.00 |
| 66–67 | 7,141.63 | 12,082.74 | 4,941.12 | |

By its first instruction, the court directed the jury to find for appellee for its general damages which were the direct and proximate result of appellant's failure to deliver the fifth crate in time for the fair, not to exceed the sum of $568.77.

By its second instruction, and over the objection of appellant, the court instructed the jury to award appellee such further sum in damages as "will fairly and reasonably compensate the plaintiff for such profits, if any, it was caused to lose as a direct and proximate result of the defendant's failure to deliver the 'fifth crate' concerning which you have heard evidence, not to exceed on this account the sum of $11,000.00, the amount claimed by the plaintiff therefor."

The jury returned a unanimous verdict awarding appellee the sum of $2,568.00.

Upon this appeal, appellant makes no objection to the award of $568.00 which manifestly is an award of general damages authorized under Instruction No. 1, but does object to the award of $2,000.00 for loss of profits authorized by Instruction No. 2.

The objection of appellant to the giving of Instruction No. 2 is that, in the words of counsel for appellant, "the evidence clearly shows that they (the special damages or loss of revenue) are too speculative to be recoverable."

■ The test of whether there can be a recovery for loss of anticipated revenues or profits is not whether the amount thereof can be ascertained with exactness or certainty, *but whether the cause of the damage or injury can with reasonable certainty be attributed to the breach of duty or wrongful act of the defendant.*

■ If it is established with reasonable certainty that damage has resulted from a breach of duty or a wrongful act of defendant, mere uncertainty as to the amount will not preclude recovery. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of damage are not capable of exact and accurate proof. Kellerman v. Dedman, Ky., 411 S.W.2d 315; 22 Am.Jur.2d Damages, Section 23.

■ But no recovery is allowed when resort to speculation or conjecture is necessary to determine whether the damage resulted from the unlawful act of which complaint is made or from other sources. 22 Am.Jur.2d, Damages, Section 24.

The proof, which is relied upon to establish that appellee suffered loss of revenue as the result of the failure of appellant to deliver the large crate and the advertising literature, consists solely of the testimony which we have mentioned, including the figures or statistics above cited.

Appellee relies upon the recent decision of Kellerman v. Dedman, supra, decided February 3, 1967. In that case, Kellerman and his wife were owners of a farm in Shelby County. Earl Perry managed the farm. Perry decided to quit farming. He and the Kellermans owned certain livestock, farm machinery, and other personal property jointly. It was agreed that this property be sold at auction and the profits divided. A disagreement over the ownership of some cattle resulted in the Kellermans appearing at the sale, and, according to Perry's witnesses, making certain statements in the presence of the potential bidders, such as there would be no sale, and that a purchaser would involve himself in a law suit. There was also evidence that these statements caused about fifty percent of the crowd to leave. There was also testimony by qualified appraisers that the property brought substantially less than its value. The court stated:

"Since there is testimony that many persons left after the aforementioned verbal exchange, that the general atmosphere at the sale was not favorable to spirited bidding and that the property sold for less than it was worth, we believe the evidence in its totality adequately supports the finding that the Perrys sustained damage caused by the Kellermans."

In that case, the tort of defendants and the loss to plaintiffs arose out of one occurrence—the auction sale. There was no interval in time between the wrongful act and the loss to plaintiff which would permit speculation that some other intervening cause could have occasioned plaintiff's loss. Moreover, as a matter of common knowledge and human experience, it is recognized that the actions of defendants in that case would certainly depress the bidding and hurt the sale.

In this case there is an interval of two months after the trade fair in which appellee sustained a loss of revenue. We recognize that, as argued by appellant, other factors may well have intervened during

this interval, which would have caused a reduction in revenue. As pointed out by appellant, the type of business in which appellee is engaged is subject to fluctuations that are normal in that type of business, and may be occasioned by many contingencies. For instance, the ability, industry, skill and energy displayed by members of the firm, the caliber of competitors and the market for the type of services rendered by appellee. Upon cross-examination of Mr. Stohlman, counsel for appellant was able to bring out, for instance, that in July, 1964, appellee's income was $7,633.13, whereas in July, 1965, before the trade fair, appellee's income was only $623.39. The very figures relied upon by appellee to establish its claim for lost revenue themselves demonstrate that the income of appellee was subject to wide fluctuations from year to year. Mr. Stohlman was unable to name any client that had been lost, nor could he name any new client whom appellee failed to get as a result of the nondelivery of the fifth crate and the advertising literature. Nor did appellee introduce testimony by any qualified expert witness to establish that a loss of profits or revenue would with reasonable certainty result from the failure of appellant.

A case in which the facts were similar to those in the instant case and which presents a good example of the proof necessary to establish a causal connection between the wrongful act of the defendant and the loss sustained by plaintiff is Time Finance Co. v. Beckman, Ky., 295 S.W.2d 346. In that case there was a failure by defendant to deliver advertising material to plaintiff to be mailed by plaintiff to prospective customers before the peak season of plaintiff's business. It was agreed between the parties that the advertising literature would be delivered in time for use during that period. The finance company had for a period of four years·kept statistics on its various types of advertising. On each loan application, the applicant was asked to say how he came to do business with Time Finance. The answers were tabulated to determine what type of adver-

tising was most effective. From the answers, by computation, Time Finance was able to determine that for 337.2 pieces of direct mail advertising, it obtained one new loan averaging $173.52. The finance company then proved the decrease in business for the season when the advertising material was not received in time. This proof pinpointed a causal connection between the failure to deliver the advertising literature and the loss of profits.

 We are of the opinion that the proof in this case is not sufficient to establish with reasonable certainty that the loss of revenue suffered by appellee, of which it complains, was occasioned by the failure of appellant to deliver the crate and literature.

We hold that so much of the judgment is reversed as awards to appellee the sum of $2,000.00 for loss of revenue or profits.

The judgment is reversed.

All concur.