Mary B. CALHOUN and Leslie D. Calhoun, Appellants

v.

Charles E. PROVENCE, II; Thomas Middleton; Kentucky Auto Exchange, Inc.; Yaden's Auto Sales, Inc.; and Legend Motors, Inc., d/b/a Legend Suzuki, Appellees.

Legend Motors, Inc., d/b/a Legend Suzuki, Cross–Appellant

v.

Mary B. Calhoun; Leslie D. Calhoun; Charles E. Provence, II; Thomas Middleton; Kentucky Auto Exchange, Inc.; and Yaden's Auto Sales, Inc., Cross–Appellees.

Nos. 2010–CA–001282–MR, 2010–CA–001348–MR.

Court of Appeals of Kentucky.

June 22, 2012.

Discretionary Review Denied by Supreme Court April 17, 2013.

---

41. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

Ralph D. Gibson (argued), Somerset, KY, for appellants/cross-appellees.

R. Williams Tooms (argued), London, KY, for appellee/cross-appellee Charles E. Provence, II.

Rodney E. Buttermore (argued), Jr., Harlan, KY, for appellee/cross-appellee Kentucky Auto Exchange, Inc.

Jay Milby Ridings (argued), London, KY, for appellee/cross-appellee Yaden's Auto Sales, Inc.

Timothy C. Feld and Drew Byron Meadows (argued), Lexington, KY, for appellee/cross-appellant Legend Motors, Inc. d/b/a Legend Suzuki.

Before COMBS, KELLER and STUMBO, Judges.

## OPINION

STUMBO, Judge:

Mary C. Calhoun ("Mrs. Calhoun") and Leslie D. Calhoun ("Mr. Calhoun") appeal from a Judgment of the Laurel Circuit Court reflecting a jury verdict in favor of Mrs. Calhoun in her action to recover damages arising from an automobile accident. She argues that the trial court erred in bifurcating the trial, failing to grant a directed verdict, failing to grant a new trial on the issue of causation, and prohibiting the introduction of the at-fault driver's criminal charges. Cross-appellant Legend Motors, d/b/a Legend Suzuki, argues that the court erred in failing to conclude that it did not own the vehicle operated by the at-fault driver, and that the purchaser's insurer provided primary insurance coverage as a matter of law. We find no error, and accordingly affirm the Judgment on appeal.

At the end of her workday on May 15, 2007, Mrs. Calhoun left her place of employment in London, Kentucky, and began driving her vehicle through the parking lot toward the exit onto Highway 1006. As she approached the exit, a vehicle operated by Charles E. Provence, II was stopped in front of her. According to Mrs. Calhoun, the vehicle in front of her suddenly accelerated backward toward her vehicle and crashed into it. The force of the collision was such that the two vehicles were stuck together.

Mrs. Calhoun did not suffer any apparent injury from the collision and she called the police. Officer Derek House arrived and conducted an investigation. Provence told Officer House that the vehicle he was operating—a 1999 GMC Jimmy 4x4—slipped out of gear and rolled backward into Mrs. Calhoun's vehicle. Mrs. Calhoun stated that the vehicle operated by Provence had accelerated backward into her car.

Officer House noticed that Provence had a lethargic speech pattern and that he was unsteady on his feet. Officer House administered two field sobriety tests, both of which Provence failed. Provence stated that he had taken a lawfully-prescribed medication called Adipex. Officer House arrested Provence, and transported him to Marymount Hospital where a blood sample was taken. That sample was tested by the Kentucky State Police laboratory in Frankfort, which revealed that Provence had taken Adipex, Xanax, and Valium. Provence later pled guilty to the charge of Reckless Driving. He acknowledged taking Adipex and Xanax, but denied taking any Valium the day of the collision.

According to Provence, at the time of the collision he was operating the GMC Jimmy as an arbitrator for Kentucky Auto Exchange and was checking a complaint about the vehicle's four wheel drive system. He would later state that contrary to what he told Officer House, he did not roll

backward into Mrs. Calhoun's vehicle, but rather it was Mrs. Calhoun's vehicle which struck the GMC Jimmy.

Though Mrs. Calhoun did not notice any injury on the day of the accident, the next day she began experiencing discomfort in her lower back, left shoulder and neck. She visited her chiropractor, who diagnosed muscle spasms and soft tissue irritation. Mrs. Calhoun received nine chiropractic treatments over the next few weeks, which reduced her back and neck pain. Her shoulder pain worsened, however, resulting in the chiropractor referring her to an orthopedic surgeon for evaluation. Mrs. Calhoun did not like the surgeon and did not return after the first visit.

By January, 2008, the shoulder pain had increased to such a degree that Mrs. Calhoun again sought medical treatment. She was examined by another orthopedic surgeon, Dr. Robert T. Grant, who recommended an MRI. After evaluating the results of the MRI, Dr. Grant diagnosed adhesive capsulitis and prescribed conservative treatments of anti-inflammatory treatment and physical therapy. According to the record, adhesive capsulitis—more commonly called "frozen shoulder"—occurs when pain and inflammation cause the patient to restrict movement, which in turn causes tissue to adhere and further restrict movement. Dr. Grant characterized the problem as idiopathic, or of unknown causation, though he suspected that the motor vehicle accident caused the pain and inflammation, which then resulted in the adhesive capsulitis.

The conservative treatment was not successful, and Mrs. Calhoun underwent surgery in March, 2008. After her shoulder did not improve, a second shoulder surgery was conducted in May, 2008. After the second surgery, Mrs. Calhoun continued with physical therapy. By November, 2008, she had little or no pain and the motion in her left arm was back to normal.

The Calhouns filed the instant action in Laurel Circuit Court against Provence and Thomas R. Middleton, who was the current or former titleholder of record of the GMC Jimmy. Mrs. Calhoun made a claim for damages based on bodily injury, property damage, and punitive damages. Mr. Calhoun claimed loss of consortium. Thereafter, the parties filed an Amended Complaint, which joined as party defendants Kentucky Auto Exchange, Inc. ("Kentucky Auto Exchange"), Yaden's Auto Sales, Inc. ("Yaden's Auto Sales"), and Legend Motors, d/b/a Legend Suzuki ("Legend Suzuki"). In the Amended Complaint, the Calhouns alleged that Kentucky Auto Exchange, Yaden's Auto Sales, and Legend Suzuki had negligently entrusted the GMC Jimmy to Provence.

Extensive discovery was conducted and the trial court rendered an Order bifurcating the proceedings. The first phase of the trial was conducted to determine Provence's liability, if any, as well as Mrs. Calhoun's comparative negligence and damages. At the second phase, the claims against Legend Suzuki and Yaden's Auto Sales would be tried. These claims included negligent entrustment, negligent hiring, retention and supervision, and apportionment among all parties.

The first phase resulted in a directed verdict in favor of the Calhouns against Provence on the issue of liability and an order overruling the Calhouns' motion for a directed verdict on the issue of whether the accident caused Mrs. Calhoun's injuries. The jury returned a verdict against Mrs. Calhoun on the issue of comparative negligence and awarded damages as follows: 1) past medical expenses: $1,289.00; 2) past pain and suffering: $600.00; 3) future pain and suffering: none; 4) lost wages: $1,800.00; and 5) vehicle damage:

$3,200.00. The jury denied Mr. Calhoun's claim for loss of consortium and returned a verdict in favor of Provence on Mrs. Calhoun's claim for punitive damages.

At the close of phase 2, the trial court directed a verdict in favor of Legend Suzuki and Yaden's Auto Sales on the Calhouns' claim of negligent entrustment. It denied the motion of Kentucky Auto Exchange for a directed verdict. The matter went before the jury, which returned a verdict in favor of Mrs. Calhoun and against Kentucky Auto Exchange on the issue of negligent entrustment. The jury apportioned liability as follows: 1) Charles E. Provence, II: 48%; 2) Mrs. Calhoun: 10%; and 3) Kentucky Auto Exchange: 42%.

A Judgment was rendered which reflected the verdicts, with credit given for basic reparations benefits payable pursuant to KRS 304.39–060(2)(a). The Calhouns' motions for a Judgment Notwithstanding the Verdict and New Trial were overruled, and this appeal followed.

■ The Calhouns first argue that the trial court committed reversible error in bifurcating the proceedings. Directing our attention to CR 42.02, the Calhouns note that a trial court shall order separate trials if it determines that such trials "will be in furtherance of convenience or will avoid prejudice, or will be conducive to expedition and economy[.]" The Calhouns argue that under the facts at bar, a bifurcated proceeding would not be conducive to expedition and economy, and that the trial court did not determine that two trials "*will* avoid prejudice." Rather, the Calhouns maintain that in bifurcating the proceeding, the court merely opined the trial would be more efficient and "*may*" be less potentially prejudicial. Additionally, the Calhouns contend that the court made no indication of what the prejudice would be, nor which party would be prejudiced. In

sum, the Calhouns argue that the bifurcation was not supported by the record and the law, that it resulted in conflicting verdicts, and that it was manifestly arbitrary, unfair, unreasonable and not supported by sound legal principles.

We have closely examined the record and the law on this issue, and find no error. CR 42.02 states that,

> [i]f the court determines that separate trials will be in furtherance of convenience or will avoid prejudice, or will be conducive to expedition and economy, it shall order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims or issues.

Accordingly, separate trials *shall* be conducted if the court determines that they will be in furtherance of convenience or will avoid prejudice, *or* will be conducive to expedition and economy. In the matter at bar, the trial court stated as its basis for bifurcation its concern that the introduction of Provence's criminal history and driving record could prejudice the proceedings against the remaining defendants if all of the claims were adjudicated in a single proceeding. In granting the defendants' motion for bifurcation, the court held that bifurcation 1) would be cleaner, 2) the trial would be more efficient, 3) the proceedings may be less prejudicial and 4), the plaintiffs would not be prejudiced by bifurcation.

■ We are not persuaded by the Calhouns' contention that the trial court's basis for bifurcating the proceeding was unsupported by the law. CR 42.02 not only allows, but requires bifurcation upon the court's finding that separate trials will be convenient, will avoid prejudice or will be expeditious. It is noteworthy that the language utilized in the civil rule is disjunc-

tive; that is to say, the word "or" rather than "and" is used. To support the conclusion that bifurcation is warranted, the trial court need only determine either that separate trials will be convenient, *or* will avoid prejudice *or* will be expeditious and economical. In the matter at bar, the Laurel Circuit Court determined that separate proceedings would be more efficient. This finding, taken alone, is sufficient to support the court's determination that bifurcation was warranted. As the Calhouns properly acknowledge, a trial court has broad discretion in ruling on a motion to bifurcate. *Island Creek Coal Company v. Rodgers,* 644 S.W.2d 339 (Ky.App.1982). Such a decision will be overturned only if it constitutes an abuse of discretion, which is found where the decision is arbitrary, unreasonable, unfair or unsupported by sound legal principles. *Commonwealth v. English,* 993 S.W.2d 941 (Ky.1999). We do not conclude that the decision at issue constitutes an abuse of discretion and accordingly find no error on this issue.

■ The Calhouns also argue that the timing of the bifurcation, the morning of trial, was prejudicial because it required a substantial reorganizing of Appellants' order of proof. While this court believes that an earlier decision on the bifurcation issue would have been preferable, we cannot say that the trial court abused it wide discretion on the issue.

■ The Calhouns next argue that the trial court erred in failing to sustain their motions for a directed verdict and a new trial on the issue of causation. At trial, Mrs. Calhoun claimed medical bills totaling $51,959.53, which she maintained were 100% attributable to the motor vehicle accident. The jury, however, awarded to Mrs. Calhoun the sum of $1,289.00 for past medical expenses, as well as $600.00 for past pain and suffering. As a basis for this disparity, the jury appears to have been persuaded by the defense's argument that while the initial chiropractic treatments—and which totaled $1,289.00—were medically necessary and required as a result of the accident, Mrs. Calhoun's subsequent medical bills were attributable to other causes. Mrs. Calhoun contends that this conclusion was not supported by the record and that the trial court erred in failing to so find. She directs our attention to the deposition testimony of the chiropractor, who opined that the symptoms she presented were a direct result of the motor vehicle accident. Additionally, she notes that Dr. Grant believed that Mrs. Calhoun's adhesive capsulitis, or "frozen shoulder," resulted from inflammation and lack of usage of the shoulder, which itself resulted from the accident.

In support of her claim of error on this issue, Mrs. Calhoun points us to the rule that a new trial shall be awarded where the jury disregards uncontroverted evidence as to damages. *Phipps v. Bisceglia,* 383 S.W.2d 367 (Ky.1964). We are not persuaded, however, by her claim that the evidence as to causation and damages was uncontroverted. Evidence was presented that Mrs. Calhoun suffered from a number of health issues upon which the jury might reasonably conclude that the adhesive capsulitis resulted from a cause or causes unrelated to the accident. Evidence was adduced that Mrs. Calhoun had a degenerative back condition, high blood pressure and a thyroid condition. Additionally, she had received previous chiropractic treatments for low back and thoracic back problems, chiropractic treatments for prior neck pain, removal of her tailbone, and right shoulder surgery. Additionally, one medical provider opined that the adhesive capsulitis was idiopathic, meaning of unknown origin or no apparent origin.

■ The question for us, then, is whether the evidence was sufficient to support

the jury's award on the issue of causation and damages. We must answer this question in the affirmative. The causal connection between an accident and an injury must be shown by medical evidence demonstrating that the link is probable and not merely possible. *Jarboe v. Harting,* 397 S.W.2d 775 (Ky.1965). Given the totality of the record, sufficient evidence was adduced at trial upon which the jury could reasonably conclude that Mrs. Calhoun's frozen shoulder resulted from something other than the motor vehicle accident or for no discernable reason at all. Therefore, we find no error.

■ Mrs. Calhoun's third and final argument is that the trial court erred in prohibiting the introduction of Provence's criminal charging documents and related testimony. Citing Kentucky Rules of Evidence (KRE) 401 and 803 (relevant evidence and hearsay), as well as *Skeans v. Commonwealth,* 912 S.W.2d 455 (Ky.App. 1995), Mrs. Calhoun maintains that the charging documents from the instant and previous criminal and traffic offenses were both relevant and admissible, and that the trial court erred in failing to so rule.

We find no error on this issue. As part of a hearing on a motion *in limine,* the court heard extensive arguments on the issue of the admissibility of the citation and other charging documents. By way of an Order rendered on May 26, 2010, the court ruled that Provence's guilty plea could be entered into evidence, but the charging documents could not. In support of this conclusion, the trial court noted that charges were just that—merely charges. Evidence which is not relevant is not admissible, and relevancy is established by a showing of probative value. KRE 401 and 402; *Turner v. Commonwealth,* 914

S.W.2d 343 (Ky.1996). Provence's plea of guilty to the charge of reckless driving associated with the accident at issue was probative and therefore relevant, as it directly related to Mrs. Calhoun's claim that Provence backed his vehicle into her vehicle, causing damages. The charging documents, both relating to the instant incident and prior violations, had no probative value, and the trial court properly so found. As such, we find no error on this issue.

■ On cross-appeal, Legend Suzuki argues that the trial court erred in ruling that it had primary responsibility for maintaining liability insurance on the vehicle that Provence was driving at the time of the accident. As a basis for the order, the court relied on KRS 186A.220(5), which provides in relevant part that in order to complete a vehicle sale, a seller must verify that the buyer has proof of insurance. Relying on *Gainsco Companies v. Gentry,* 191 S.W.3d 633 (Ky.2006), the court determined that this statutory requirement is mandatory and that Legend Suzuki's failure to comply resulted in its retaining the status of primary insured.[1] Again relying on *Gainsco,* the court rejected Legend Suzuki's claim that its prior dealings with Yaden's Auto Sales, including its knowledge that Yaden's Auto Sales had insurance in the past, relieved Legend Suzuki of its duty to verify Yaden's Auto Sales' insurance in the instant transaction. And finally, the court found the even if a "sale" was consummated, Legend Suzuki's failure to verify Yaden's Auto Sales' insurance resulted in a conclusion of law that Legend Suzuki was the primary insured even though it had transferred possession. The order at issue was rendered on March 2,

1. *Gainsco* held in relevant part that an automobile dealer failed to obtain proof of insurance needed to validly transfer ownership of a truck to a buyer, and the liability coverage provided by selling dealer's policy therefore remained primary.

2010, and made appealable by entry of the final order rendered on June 15, 2010.

Legend Suzuki now argues that we may resolve this issue in its favor by the application of three statutory provisions. It maintains that the first statute, KRS 190.010, provides that irrespective of how the parties characterize the transaction between Legend Suzuki and Yaden's Auto Sales, it was a "sale." It argues that the application of the second statute, KRS 186A.220, reveals that Yaden's Auto Sales was the owner of the vehicle at the time of the accident, making it the primary insured. And finally, Legend Suzuki argues that under KRS 304.39–090, upon acceptance Yaden's Auto Sales had the obligation to insure the vehicle as a matter of law. The corpus of their claim of error on this issue is that in dealer-to-dealer transactions, the insurance obligation passes with the possession of the vehicle, and that the trial court erred in failing to so rule.

The accident in question occurred on May 15, 2007. At the time of the accident, the vehicle at issue was driven by Provence and registered to defendant Thomas Middleton. Both before and after the accident, the vehicle was subject to several transactions.

On April 21, 2007, Legend Suzuki received title to and possession of the vehicle from Middleton.[2] Because the vehicle was subject to a lien, Middleton was unable to provide unencumbered title to the vehicle until the lien was paid off. On or around May 8, 2007 (the record again being unclear because the Sales Agreement was unsigned by the purported buyer), Legend Suzuki "sold" the vehicle to Yaden's Auto Sales. Sometime thereafter, possibly on the date of the accident, Yaden's Auto Sales delivered possession and control of the vehicle to Kentucky Auto Exchange for the purpose of allowing Kentucky Auto Exchange to auction the vehicle.

The auction was conducted and a third-party purchaser placed the winning bid. Under the terms of the auction, the winning bidder and an independent arbitrator were given the opportunity to test drive the vehicle. Also, if Kentucky Auto Exchange and the buyer disagreed about the condition of the vehicle, the arbitrator would render an opinion which was final. The arbitrator—in this case Provence—was paid by Kentucky Auto Exchange. At the time of the accident, Provence was driving the vehicle in his capacity of arbitrator and for the purpose of determining if the vehicle had a defective four wheel drive system.

The issues for our consideration are whether the trial court properly determined that 1) Legend Suzuki failed to verify that Yaden's Auto Sales had proof of insurance, and 2) the application of *Gainsco* and KRS 186A.220(5) result in Legend Suzuki retaining its status as the primary insured. We must answer these questions in the affirmative. KRS 186A.220 states that,

(1) Except as otherwise provided in this chapter, when any motor vehicle dealer licensed in this state buys or accepts such a vehicle in trade, which has been previously registered or titled for use in this or another state, and which he holds for resale, he shall not be required to obtain a certificate of title for it, but shall, within fifteen (15) days after acquiring such vehicle, notify the county clerk of the assignment of the motor vehicle to his dealership and pay the required transferor fee.

---

**2.** Other portions of the record characterize Middleton as the title holder at the time of the accident.

(2) Upon purchasing such a vehicle or accepting it in trade, the dealer shall obtain from his transferor, properly executed, all documents required by KRS 186A.215, to include the odometer disclosure statement thereon, together with a properly assigned certificate of title.

(3) The dealer shall execute his application for assignment upon documents designated by the Department of Vehicle Regulation, to the county clerk of the county in which he maintains his principal place of business. Such clerk shall enter the assignment upon the automated system.

(4) The dealer shall retain the properly assigned certificate of title received from his transferor, and may make any reassignments thereon until the forms for dealer assignment on the certificate of title are exhausted. The Department of Vehicle Regulation may, if it deems it warranted, provide a special document to allow for additional dealer assignments without requiring system generated documents.

(5) When he assigns the vehicle to a purchaser for use, he shall deliver the properly assigned certificate of title, and other documents if appropriate, to such purchaser, who shall make application for registration and a certificate of title thereon. The dealer may, with the consent of the purchaser, deliver the assigned certificate of title, and other appropriate documents of a new or used vehicle, directly to the county clerk, and on behalf of the purchaser, make application for registration and a certificate of title. In so doing, *the dealer shall require from the purchaser proof of insurance as mandated by KRS 304.39–080 before delivering possession of the vehicle.* Notwithstanding the provisions of KRS 186.020, 186A.065, 186A.095, 186A.215, and 186A.300, if a dealer elects to deliver the title documents to the county clerk and has not received a clear certificate of title from a prior owner, the dealer shall retain the documents in his possession until the certificate of title is obtained. (Emphasis added).

Thus, Legend Suzuki had a statutory duty to require from Yaden's Auto Sales proof of insurance before delivering possession of the vehicle. The trial court properly found that it did not meet that requirement.

Under *Gainsco,* Legend Suzuki's prior dealings with Yaden's Auto Sales and its knowledge that Yaden's Auto Sales provided proof of insurance in those prior transactions are not relevant to the issue at hand. That is to say, though Legend Suzuki knew that Yaden's Auto Sales had proof of insurance in the past, it was nevertheless statutorily required to verify Yaden's Auto Sales' insurance in the instant case. And finally, *Gainsco* addresses Legend Suzuki's contention that it was exempt from KRS 186A.220(5) because Yaden's Auto Sales—in its capacity as buyer—was required to have insurance under KRS 190.033. As the trial court correctly noted, the purchaser in *Gainsco* did in fact have insurance, but this did not affect the seller's duty to comply with the statutory requirement of verification. The trial court found as a matter of law that as with the seller in *Gainsco,* Legend Suzuki did not strictly comply with the statute requiring it to verify Yaden's Auto Sales' insurance. Legend Suzuki also failed to notify the clerk about the transaction within 15 days as required by statute. Accordingly, we find no error in the trial court's conclusion that Legend Suzuki did not comply with statutory requirements regarding verification and notice, and that pursuant to *Gainsco,* Legend Suzuki is properly designated as the primary insured at the time of the accident.

For the foregoing reasons, we affirm the Judgment of the Laurel Circuit Court.

ALL CONCUR.