RENDERED: JUNE 21, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2022-CA-0934-MR

LEGNA TOCADO RODRIGUEZ AND
ILKA RODRIGUEZ DIAQUEZ                  APPELLANTS

APPEAL FROM FAYETTE CIRCUIT COURT
v.        HONORABLE KIMBERLY BUNNELL, JUDGE
ACTION NO. 16-CI-04359

JEFFREY B. SHARP                          APPELLEE

AND

NO. 2022-CA-0971-MR

JEFFREY B. SHARP                 CROSS-APPELLANT

CROSS-APPEAL FROM FAYETTE CIRCUIT COURT
v.        HONORABLE KIMBERLY BUNNELL, JUDGE
ACTION NO. 16-CI-04359

LEGNA TOCADO RODRIGUEZ AND
ILKA RODRIGUEZ DIAQUEZ             CROSS-APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CETRULO, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Legna Tocado Rodriguez and Ilka Rodriguez Diaquez bring Appeal No. 2022-CA-0934-MR from a May 27, 2022, Judgment and a June 29, 2022, Order Amending the Judgment of the Fayette Circuit Court. Jeffrey B. Sharp brings Cross-Appeal No. 2022-CA-0971-MR from the same judgments.

On April 9, 2015, in Lexington, Kentucky, a vehicle driven by Jeffrey B. Sharp (Sharp) rear ended a vehicle driven by Legna Tocado Rodriguez (Legna) and in which Ilka Rodriguez Diaquez (Ilka) rode as a passenger.

Legna and Ilka then filed a complaint against, *inter alios*, Sharp. Therein, Legna and Ilka claimed that Sharp drove his motor vehicle in a negligent, grossly negligent, and/or reckless manner, thereby causing the motor vehicle accident. Legna and Ilka sought compensatory and punitive damages.

On June 10, 2019, Sharp filed a motion for partial summary judgment seeking dismissal of Legna and Ilka's claims for gross negligence and punitive damages. According to Sharp, Legna and Ilka alleged that Sharp was grossly negligent because he was using a cell phone and was making a U-turn at the time

of the accident. Sharp argued that his alleged actions of using a cell phone and making a U-turn did not constitute gross negligence.

Legna and Ilka filed a response. Therein, they maintained that the facts demonstrated that Sharp made five calls on his cell phone immediately before the accident, was making an illegal U-turn, and had previously made illegal U-turns at that intersection. Taken together, Legna and Ilka asserted that Sharp's actions rose to the level of gross negligence. Thus, Legna and Ilka claimed that summary judgment was improper, as material issues of fact existed as to whether Sharp's actions amounted to gross negligence.

By order entered July 18, 2019, the court granted Sharp's motion for partial summary judgment and dismissed Legna's and Ilka's claims of gross negligence and punitive damages.

Thereafter, on November 20, 2020, Sharp filed another motion for summary judgment. Sharp argued that Legna's and Ilka's claims for future medical expenses and future pain and suffering should be dismissed. In particular, Sharp asserted that both Legna and Ilka failed to present expert evidence that future medical expenses or future pain and suffering would occur. In the absence of such evidence, Sharp maintained that he was entitled to summary judgment.

Legna and Ilka filed a response. They argued that expert opinion was unnecessary to demonstrate entitlement to future medical expenses and future pain

and suffering. Legna and Ilka maintained that their testimony concerning ongoing pain from injuries sustained in the accident was sufficient to create a material issue of fact. Legna and Ilka also pointed to the expert testimony of Dr. Rick Lyon, who was an expert secured by Sharp. According to Legna and Ilka, Dr. Lyon opined that it was possible that they would have an increased risk of future complications. Considering Legna's, Ilka's, and Dr. Lyon's testimony, Legna and Ilka asserted that material issues of fact existed, thus precluding summary judgment.

By order entered April 16, 2021, the trial court granted Sharp's motion for summary judgment and dismissed Legna's and Ilka's claims for future medical expenses, future pain and suffering, and increased risk of future complications.

Eventually, the case was tried before a jury during a three-day trial. The jury apportioned fault and found that Sharp was 90 percent at fault and Legna was 10 percent at fault for causing the accident. The jury also found that Ilka incurred $7,365 for past medical expenses and $2,200 for past pain and suffering. As to Legna, the jury found she incurred $7,755 in past medical expenses and $7,000 in past pain and suffering. In its judgment, the trial court awarded Ilka a total of $9,565. The court reduced Legna's award by 10 percent, representing her fault in causing the accident, and awarded her a total of $13,279.50.

Sharp filed a motion to alter, amend, or vacate the judgment, and by an order amending the judgment, the trial court granted the motion. The trial court then reduced the awards to Legna and Ilka. The trial court determined that Sharp was entitled to a credit for those amounts paid by basic reparations benefits per Kentucky Revised Statutes (KRS) 304.39-060(2). As a result, the trial court awarded Ilka a total of $1,980 in damages and awarded Legna a total of $6,300 in damages.

Legna and Ilka filed a notice of appeal (Appeal No. 2022-CA-0934-MR) from the judgment and amended judgment. Sharp also filed a protective cross-appeal (Cross-Appeal No. 2022-CA-0971-MR) from the judgment and amended judgment. We shall initially address Appeal No. 2022-CA-0934-MR and then Cross-Appeal No. 2022-CA-0971-MR.

### Appeal No. 2022-CA-0934-MR

Legna and Ilka contend that the trial court erroneously rendered summary judgment upon their claim of damages for an increased risk of future harm, future medical expenses, and future pain and suffering. Legna and Ilka maintain that Dr. Lyon opined that it was "possible" that they could have future flare-ups related to the injuries sustained in the accident.[1] Legna and Ilka argue that future medical expenses may be awarded when the increased risk of future

---

[1] Dr. Rick Lyon was a medical expert testifying for Jeffrey B. Sharp.

harm is only a possibility. Legna and Ilka also rely on their own testimony. They both testified that they experienced ongoing pain and suffering due to injuries sustained in the accident. Legna and Ilka assert that expert medical testimony as to future pain and suffering is unnecessary. Rather, their own testimony is sufficient to create a jury question.

Summary judgment is proper where there exists no genuine issue of material fact and movant is entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03; *see Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Because we give no deference to the lower court's conclusions of law or assessment of the record, our review of summary judgment is always *de novo. Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010).

In Kentucky, it is well-established that a plaintiff may only recover those damages that with reasonable certainty were caused by defendant's actions. *Roadway Express, Inc. v. Don Stohlman & Assocs., Inc.*, 436 S.W.2d 63, 65 (Ky. 1968); *Gill v. Burress*, 382 S.W.3d 57, 63-64 (Ky. App. 2012). So, "contingent, uncertain and speculative damages generally may not be recovered." *Curry v. Bennett*, 301 S.W.3d 502, 506 (Ky. App. 2009) (citation omitted). However, "mere uncertainty as to the amount [of damage] will not preclude recovery." *Roadway Express, Inc.*, 436 S.W.2d at 65; *Johnson v. Cormney*, 596 S.W.2d 23, 27

(Ky. App. 1979), *overruled on other grounds by Marshall v. City of Paducah*, 618 S.W.2d 433 (Ky. App. 1981). The pivotal distinction is between causation and amount of damages. The plaintiff is required to prove with reasonable certainty that damage was caused by defendant's conduct. Upon establishing that damage has occurred from such conduct, mere uncertainty as to the amount of damage does not preclude a jury awarding damages. *Roadway Express, Inc.*, 436 S.W.2d at 65.

In this case, Legna and Ilka possess the burden of demonstrating with reasonable certainty that damages for future medical expenses, future pain and suffering, and increased risk of future harm were caused by Sharp's conduct. Legna and Ilka point to Dr. Lyon's testimony that future medical expenses and flare-ups were possible. However, Dr. Lyon was clear that he did not believe within a reasonable degree of medical probability that Legna or Ilka would incur future medical expenses or future pain and suffering. Rather, Dr. Lyon explicitly testified that both Legna and Ilka suffered temporary physical injuries that had completely resolved. When specifically questioned by Legna and Ilka's counsel as to whether a possibility of future harm existed, Dr. Lyon testified that anything was possible.

It is also clear that Dr. Lyon's testimony did not with reasonable certainty link Legna's and Ilka's claimed damages for future medical expenses, future pain and suffering, and increased risk of future harm to Sharp's negligent

conduct. *See Roadway Express, Inc.*, 436 S.W.2d at 65; *Gill*, 382 S.W.3d at 63-64; *Rogers v. Sullivan*, 410 S.W.2d 624, 627-28 (Ky. 1966).

As for Legna's and Ilka's testimony that each continues to experience pain from injuries sustained in the accident, such testimony is insufficient to create a genuine issue of material fact upon their claimed damages for future medical expenses, future pain and suffering, and increased risk of future harm. In Kentucky, "[t]he causal connection between an accident and an injury must be shown by medical evidence demonstrating that the link is probable and not merely possible." *Calhoun v. Provence*, 395 S.W.3d 476, 482 (Ky. App. 2012), *overruled on other grounds by Travelers Indem. Co. v. Armstrong*, 565 S.W.3d 550, 565 (Ky. 2018). Accordingly, we are of the opinion that the trial court properly rendered summary judgment upon Legna's and Ilka's damage claims for future medical expenses, future pain and suffering, and increased risk of future harm.

Legna and Ilka next assert that the trial court erred by rendering summary judgment upon their claim for punitive damages. Legna and Ilka argue that Sharp made five phone calls before the accident and allege he was attempting to make an illegal U-turn at the time of the accident. Legna and Ilka also point out that Sharp was driving a vehicle with illegal window tint. Taken together in a light most favorable to them, Legna and Ilka believe that a material issue of fact existed

upon whether Sharp's acts were grossly negligent or reckless at the time of the accident.

Under KRS 411.184(2), punitive damages are recoverable by a plaintiff "upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud, or malice."[2]  Punitive damages are also recoverable under the common-law upon a showing by plaintiff that defendant's action amounted to gross negligence.  *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 870 (Ky. 2016); *Morris v. Boerste*, 641 S.W.3d 688, 696-97 (Ky. App. 2022).

Under the facts presented, we cannot conclude that Sharp's actions rose to the level of gross negligence.  According to Legna and Ilka, Sharp made five calls right before the accident, and attempted to make a U-turn.  However, there is no evidence in the record establishing a causal connection between the phone calls and the accident.  Similarly, as Sharp rear-ended Legna and Ilka as they were turning in the intersection, he could not have been making a U-turn at the time of the accident.  They also point out that Sharp's vehicle had tinted windows, although Sharp was not cited by law enforcement for this alleged violation.  Legna and Ilka have failed to demonstrate how these actions constitute

---

[2] In *Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998), the Kentucky Supreme Court determined that the subjective awareness standard of Kentucky Revised Statutes 411.184(1)(c) was unconstitutional.

gross negligence versus mere ordinary negligence. The record does not reflect that Sharp acted with a wanton or reckless disregard for the lives, safety, or property of others. In reaching this conclusion, we rely upon *Kinney v. Butcher*, 131 S.W.3d 357 (Ky. App. 2004). Therein, the Court held that a defendant who was driving a motor vehicle "ten miles per hour in excess of the posted speed limit" and who failed "to complete a pass before entering a no-passing zone constitute[s] nothing more than ordinary negligence." *Kinney*, 131 S.W.3d at 359. Additionally, the Court observed:

> Were we to accept Kinney's argument that it amounts to wanton or reckless disregard for the safety of others, it would effectively eliminate the distinction between ordinary and gross negligence in the context of automobile accidents. Nearly all auto accidents are the result of negligent conduct, though few are sufficiently reckless as to amount to gross negligence, authorizing punitive damages.

*Kinney*, 131 S.W.3d at 359.

Likewise, we believe that Sharp's actions were merely negligent and to hold otherwise, would "effectively eliminate the distinction between ordinary and gross negligence[.]" *Id.* at 359. In this case, Sharp rear-ended Legna's vehicle at an intersection in a low-speed accident. At best, Sharp failed to exercise reasonable care in driving his auto. The evidence does not establish that Sharp acted wantonly or in reckless disregard of the safety of others. *See Nissan Motor Co., Ltd. v. Maddox*, 486 S.W.3d 838, 840 (Ky. 2015). Accordingly, we conclude

-10-

that the trial court properly rendered summary judgment dismissing Legna's and Ilka's claims for punitive damages.

Legna and Ilka next assert that the trial court improperly determined that certain communications between appellee's counsel and appellee's expert witness, Dr. Lyon, were privileged by the attorney-client privilege and the work-product privilege. Legna and Ilka point out that they sought to take the deposition of Dr. Lyon and simultaneously sought from Dr. Lyon documents, correspondence, writings, theories, impressions, messages, email, memoranda between Dr. Lyon and anyone, including counsel for Sharp. Legna and Ilka argue that the work-product privilege is not an absolute privilege but is a qualified privilege that can be defeated upon a showing that the requesting party has a substantial need for the materials and is unable to obtain the materials by other means without undue hardship. Legna and Ilka claim that they have a substantial need for the communications between Sharp's counsel and Dr. Lyon in order to conduct a thorough cross-examination of Dr. Lyon at trial. And, Legna and Ilka maintain that the communications sought are internal and cannot be accessed by any other method. Also, Legna and Ilka believe that the communications do not come within the purview of the attorney-client privilege as Dr. Lyon is not the client, the client's representative, the attorney, or the attorney's representative. Legna and Ilka further point out that Sharp advanced a general claim of privilege and failed to

produce a privilege log or to identify the privilege communications in order to facilitate a review of each alleged privileged communication.

The record reveals that Sharp filed a motion for a protective order and sought to prevent discovery of the following:

> 4.  All correspondence, memoranda, reports, and other writings and documentation reviewed by you from or on behalf of any party or their attorney herein relative to this action;
>
> . . . .
>
> 6.  All correspondence, memoranda, reports, written opinions, theories, impressions, requests for information, and other documentation generated by you relative to the parties and/or the subject litigation;
>
> . . . .
>
> 9.  All computer printouts with all e-mail stored messages from computers used by you or your agent, servants, and/or employees relative to this action;
>
> . . . .
>
> 12.  Copies of all correspondence written by you to anyone concerning this case;
>
> . . . .
>
> 13.  Copies of all correspondence written to you from anyone concerning this case[.]

October 7, 2019, memorandum in support of motion for protection order at 5.

The attorney-client privilege generally provides that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client[.]" Kentucky Rules of Evidence (KRE) 503(b). The communication must be confidential in order for the privilege to attach.

As to a testifying expert witness and the attorney-client privilege, the Kentucky Supreme Court has recognized that "confidentiality implies that the information will not be used to form the basis of expert testimony at trial; this is because expert testimony must be cross-examinable." *Sanborn v. Commonwealth,* 892 S.W.2d 542, 550 (Ky. 1995). The Supreme Court further emphasized that:

> 1. A distinction must be drawn between an expert hired to testify at trial and an expert consulted as an adviser who will not testify. The first is a witness who, as the Advisory Committee's Notes to Standard 503(a)(3) indicate, does not fall in the definition of representative of lawyer. In this situation disclosure is contemplated and the privilege is eliminated. A contrary finding would permit a party to exclude relevant evidence. A party ought not to be permitted to thwart effective cross-examination of a material witness whom he will call at trial merely by invoking the attorney-client privilege to prohibit pretrial discovery. [Footnotes and internal quotation marks omitted.]

*Sanborn*, 892 S.W.2d at 550 (citation omitted). Thus, communications with a testifying expert witness are not shielded from disclosure by the attorney client privilege.[3]

In this case, Dr. Lyon was a testifying witness, and thus, any communications between Dr. Lyon and Sharp's attorney were not privileged under the attorney-client privilege.

As to the attorney work-product privilege, documents prepared in anticipation of ligation are only discoverable upon a showing of substantial need to obtain the documents and inability to otherwise obtain documents without undue hardship. CR 26.02(3); *Reynolds Consumer Prods., LLC v. Comm'r of the Dep't of Workplace Standards*, 592 S.W.3d 758, 762 (Ky. App. 2020). Our Court has recognized that "[a] two-step analysis is necessary to determine whether a specific document claimed to be privileged is nevertheless discoverable." *Reynolds Consumer Prods., LLC*, 592 S.W.3d. at 761. First, it must be determined whether the document qualifies as work product of the attorney. *Id.* Second, if so, the document may be discoverable only if there is a substantial need for the document and the document cannot be obtained without undue hardship. *Id.*

---

[3] Kentucky Rules of Civil Procedure 26.02(4) sets forth the methods of discovery applicable to testifying expert witnesses.

In this case, Legna and Ilka filed a notice to take the video deposition of Dr. Lyon with a substantial document request. Sharp filed a motion for protective order to limit the scope of document production such as to not impose an undue burden on Sharp's expert witness. At the hearing on the motion on October 25, 2019, the trial court indicated that discovery would be permissible of documents relied upon by Dr. Lyon in formulating his opinion. On November 13, 2019, the court granted the motion for protective order in part and denied in part. Legna and Ilka subsequently deposed Dr. Lyon on three occasions, said depositions being used as Dr. Lyon's trial testimony.[4] Subsequent to the depositions, Legna and Ilka did not file a motion to compel the production of any documents nor have they cited to this Court where in the record, including Dr. Lyon's depositions, that they presented any objection to the document production or identified what documents relied upon by Dr. Lyon as an expert witness that were not produced. Without preservation of these purported errors by the trial court, this Court is not inclined to review the same. Kentucky Rules of Appellate Procedure 32(A)(4). *See also Alliant Hosps., Inc. v. Benham*, 105 S.W.3d 473, 476 (Ky. App. 2003).

Legna and Ilka also maintain that the trial court erroneously failed to require Dr. Lyon to comply with its November 13, 2019, order. In that order,

---

[4] Dr. Lyon was deposed on May 11, 2020, July 23, 2020, and August 20, 2020.

Legna and Ilka point out that Dr. Lyon was ordered to reveal the "percentage of his income derived from evaluations and litigation-related work as compared to his medical patient practice[.]" Legna and Ilka's Brief at 20. Legna and Ilka note that Sharp filed a motion to compel a rule 35 examination and stated that Dr. Lyon refused to disclose such information and withdrew as an expert witness. Legna and Ilka point out that Sharp then sought to compel them to come to Kentucky to submit to a medical examination per CR 35.01 with Sharp's new expert, Dr. Henry Tutt. The trial order granted the motion for the new medical examination by order entered February 17, 2020. Legna and Ilka resided in Florida and did not want to travel to Kentucky for the medical examination. So, Legna and Ilka assert that they reached an agreement with Sharp's counsel wherein they would not object to Dr. Lyon as a witness but would still be able to question him concerning the percentage of his income derived from evaluations compared to his income from medical practice cases. According to Legna and Ilka, the trial court nonetheless precluded them from questioning Dr. Lyon upon the percentage of income derived from evaluations compared to the percentage of his income derived from medical practice cases.

The record reveals that, on February 10, 2020, the parties were before the trial court concerning the parameters of Legna and Ilka's questioning of Dr. Lyon. It appears that Legna and Ilka did not wish to travel to Kentucky at Sharp's

expense and contacted Sharp's attorney. The parties reached an agreement although each party differed upon the terms of the agreement. According to Sharp, Legna and Ilka agreed not to question Dr. Lyon upon the percentage of income derived from evaluations compared to the percentage of his income derived from medical practice cases. In return, Sharp agreed to keep Dr. Lyon as his expert, thereby rendering a medical examination with Dr. Tutt unnecessary. According to Legna and Ilka, they merely agreed to not move to exclude Dr. Lyon as a witness, and in exchange, Sharp agreed to keep Dr. Lyon as his expert, thereby rendering unnecessary a medical examination with Dr. Tutt.

The trial court heard arguments from the parties concerning the content of the agreement. The court decided that Legna and Ilka had two choices: (1) Dr. Lyon could remain the expert for Sharp. If he did, Legna and Ilka could not question Dr. Lyon concerning the percentage of income derived from evaluations compared to the percentage of his income derived from medical practice cases and also would not be compelled to attend a medical examination by Dr. Tutt; or (2) Dr. Lyon would not remain the expert for Sharp, and Legna and Ilka would be compelled to travel to Kentucky for a medical examination by Dr. Tutt. The trial court indicated that Legna and Ilka could inform the court at a later

time as to which option they chose.[5]  It appears that Legna and Ilka chose the first option as Dr. Lyon testified at trial by video deposition.

It is clear that Sharp had the right to require a medical examination of Legna and Ilka under CR 35.01 with Dr. Tutt.  With both parties disagreeing upon the terms of their purported agreement, the trial court utilized its discretion by giving Legna and Ilka the option of traveling to Kentucky for the medical examination by Dr. Tutt or accepting Dr. Lyon with the restriction upon questioning him.  Accordingly, we cannot conclude that the trial court abused its discretion or committed reversible error by so doing.

Legna and Ilka further argue that Sharp improperly used a peremptory strike to remove Juror 3011, who was African-American, without a race-neutral reason in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986).  Sharp's reasons for exercising the strike were that Juror 3011 and Legna had been previously employed as teaching assistants with the Fayette County Public Schools and that Juror 3011 had previously been a plaintiff in a personal injury action.  Legna and Ilka also note that they are Cuban-American immigrants.

---

[5] At trial, Dr. Rick Lyon testified by video deposition.  It does appear that Legna Tocado Rodriguez and Ilka Rodriguez Diaquez questioned Dr. Lyon concerning  the percentage of income derived from evaluations compared to the percentage of his income derived from medical practice cases.  Jeffrey Sharp objected to such questioning, and the trial court sustained the objection by order entered April 16, 2021.

-18-

It is well-established that "[t]he use of peremptory challenges to remove jurors from the venire on the basis of race or gender violates the Equal Protection Clause of the Constitution." *Ross v. Commonwealth,* 455 S.W.3d 899, 906 (Ky. 2015); *see also Louisville Metro Government v. Ward,* 610 S.W.3d 295, 308-309 (Ky. App. 2020). In *Batson v. Kentucky,* 476 U.S. at 96-98, the United States Supreme Court set forth a three-part analysis for determining whether the use of a peremptory challenge violates the equal protection clause:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Commonwealth v. Snodgrass*, 831 S.W.2d 176, 178 (Ky. 1992) (citing *Batson*, 476 U.S. at 96-98); *see also Louisville Metro Gov't*, 610 S.W.3d at 308-09. And, the trial court's ultimate decision is "akin to a finding of fact" and "will not be disturbed unless clearly erroneous." *Roe v. Commonwealth*, 493 S.W.3d 814, 826 (Ky. 2016) (citation omitted) (quoting *Chatman v. Commonwealth*, 241 S.W.3d 799, 804 (Ky. 2007) and *Washington v. Commonwealth*, 34 S.W.3d 376, 380 (Ky. 2000)).

We cannot conclude that the trial court's decision to deny Legna and Ilka's *Batson* challenge was clearly erroneous. It is clear that Sharp's counsel

-19-

offered race-neutral and reasonable explanations for striking Juror 3011. The

instant action is a personal injury action, and in light of Juror 3011 being involved

previously in a personal injury lawsuit, there exists substantial evidence of a

probative value to support the trial court's determination that Sharp's race-neutral

reason to strike Juror 3011 was not a pretext for racial discrimination. *See*

*Commonwealth v. Coker*, 241 S.W.3d 305, 309-10 (Ky. 2007).

Legna and Ilka next contend that the trial court committed reversible

error by excluding the testimony of Lissette Tocado for failure to disclose her as a

witness per CR 26.05. Legna and Ilka point out that Tocado is the sister of Legna

and daughter of Ilka and that Tocado came to the scene of the accident. Legna and

Ilka assert that Tocado would have testified as a fact witness to their complaints of

pain immediately following the accident and "statements made by the parties."

Legna and Ilka's Brief at 23.

KRE 103 provides in relevant part:

(a) Effect of erroneous ruling. Error may not be
predicated upon a ruling which admits or excludes
evidence unless a substantial right of the party is
affected; and

(1) Objection. If the ruling is one admitting
evidence, a timely objection or motion to strike
appears of record, stating the specific ground of
objection, if the specific ground was not apparent
from the context; or

-20-

(2) Offer of proof.  If the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

To preserve for appellate review an evidential ruling excluding evidence, the substance of such evidence must be entered into the record by avowal or offer of proof.  *Kentucky Guardianship Adm'rs, LLC v. Baptist Healthcare Sys., Inc.,* 635 S.W.3d 14, 30-31 (Ky. 2021).  The failure to do so will preclude review by the appellate court when the substance of the proposed evidence is not apparent from the record.  *Id.*

In the case *sub judice*, Legna and Ilka acknowledge they did not make an offer of proof or avowal of Tocado's testimony.  Rather, they argue that the substance of Tocado's testimony was known because in Plaintiff's deposition, "Plaintiff testified that Lisette Tocado came to the scene, talked to officers, and then drove the injured victims from the scene."  Legna and Ilka's Combined Reply and Response Brief at 22.  However, this Court is unable to discern the substance of Tocado's actual testimony from "Plaintiff's deposition" and is, thus, unable to review the alleged error.  As such, we conclude that the trial court did not commit reversible error by excluding Tocado's testimony.  *See Kentucky Guardianship Adm'rs, LLC,* 635 S.W.3d at 30-31.

Legna and Ilka further assert that the trial court erred by failing to give the jury a missing evidence instruction concerning Sharp's intentional

-21-

decision after the accident to trade in the cell phone he was using at the time of the accident. In so doing, Legna and Ilka argue that Sharp could have reasonably anticipated that his cell phone would be relevant evidence when the accident occurred.

In *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 731 (Ky. 2020) (quoting *University Medical Center, Inc. v. Beglin*, 375 S.W.3d 783, 792 (Ky. 2011)), the Supreme Court concluded that a trial court may submit a missing evidence instruction when:

> (1) the evidence is material or relevant to an issue in the case; (2) the opponent had "absolute care, custody, and control over the evidence;" (3) the opponent was on notice that the evidence was relevant at the time he failed to produce or destroyed it; and (4) the opponent, "utterly without explanation," in fact failed to produce the disputed evidence when so requested or ordered.

And, the decision upon whether to give a missing evidence instruction is within the trial court's discretion and will only be reversed for an abuse of discretion. *Disselkamp*, 600 S.W.3d at 730.

In this case, the motor vehicle accident occurred on April 9, 2015, and Legna and Ilka filed their complaint on November 29, 2016. Sharp traded in his cell phone for an upgrade after the accident but before the filing of the complaint. Considering the facts herein, it was not an abuse of discretion for the trial court to have determined that Sharp was unaware that his old cell phone would be relevant

when he traded it as no complaint had been filed by Legna and Ilka at that time and the motor vehicle accident was minor. We, thus, conclude that the trial court did not err by failing to give a missing evidence instruction.

Legna and Ilka also argue that the trial court erroneously excluded evidence that Sharp's motor vehicle insurance company, Liberty Mutual Insurance Company, paid the bills of Sharp's expert witness, Dr. Lyon. Legna and Ilka maintain that they "sought to expose the true bias or special interest of Dr. Lyon by using evidence that he had been paid directly by the insurer and to admit the insurance policy as evidence[.]" Legna and Ilka's Brief at 23-24. Generally, it is recognized that "evidence that an expert witness was retained by a particular party and the amount of compensation paid to the expert for services rendered was highly relevant to the issue of the expert's credibility." *Miller ex. rel. Monticello Banking Co., v. Marymount Medical Center*, 125 S.W.3d 274, 282 (Ky. 2004). And, the trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Clephas v. Garlock, Inc.*, 168 S.W.3d 389, 393 (Ky. App. 2004). We will only reverse the trial court's ruling if the erroneous evidential ruling is prejudicial to the substantial rights of the party and a substantial possibility exists that the jury verdict would have been different absent the error. *Porter v. Allen*, 611 S.W.3d 290, 294 (Ky. App. 2020); *Davis v. Fischer Single Family Homes, Ltd.*, 231 S.W.3d 767, 776 (Ky. App. 2007).

In this instance, reference to an insurance carrier would clearly infer that insurance was available to Sharp to pay Legna's and Ilka's claims. Such an inference or argument regarding insurance has long been prohibited by Kentucky courts as prejudicial and otherwise is not relevant to the merits of the case regarding causation or damages. *White v. Piles*, 589 S.W.2d 220, 222 (Ky. App. 1979). Additionally, the amount of compensation paid to Dr. Lyon was elicited at trial through cross-examination along with the fact that Dr. Lyon typically testifies as a defense witness in about 97 percent of cases that he testifies in. Considering the prejudice to Sharp, we are unable to conclude that the trial court abused its discretion by excluding evidence that Liberty Mutual directly paid Dr. Lyon's fees.

Legna and Ilka next argue that the trial court improperly made "rulings and statements regarding alleged witness Russell Hillard, and in bolstering him in front of the jury." Legna and Ilka's Brief at 15-16. Legna and Ilka point out that Hillard was a witness, who allegedly saw the accident, and was called by Sharp. Legna and Ilka maintain that the trial "court repeatedly made statements in front of the jury which essentially vouched for Hillard's credibility and downplayed his false testimony." Legna and Ilka's Brief at 16. For instance, Legna and Ilka recount that during trial, Sharp called Hillard as a witness, but Hillard was not present. According to Legna and Ilka, Hillard returned to testify, and the trial "court downplayed Hillard's intentional disregard of the subpoena for

-24-

his trial attendance by advising him in front of the jury, '[w]e're glad you came back, I'm sorry you left.'" Legna and Ilka's Brief at 16. In another example, Legna and Ilka assert that during their impeachment of Hillard's purported false testimony, the trial court informed Hillard that "sometimes we don't remember something, they are allowed to say to us 'do you remember me asking you this question back on this date.'" Legna and Ilka's Brief 17. And, Legna and Ilka point out that Hillard asked in front of the jury if he needed a lawyer, and the trial court responded that Hillard did not need a lawyer because he did nothing wrong. Lastly, Legna and Ilka cite that the trial court asked Hillard for a business card and asked Hillard to do a commercial for Hillard's employer in front of the jury.

It is well established that the trial judge should refrain from comments during the trial that are prejudicial to the parties, the witnesses, or the subject matter of the action. *Commonwealth, Dept. of Highways v. Eubank*, 369 S.W.2d 15 (Ky. 1963). A trial judge possesses "the right and duty, within reasonable limits, to bring out the facts in the case before him[.]" *Transit Auth. of River City v. Montgomery*, 836 S.W.2d 413, 416 (Ky. 1992). In so doing, a trial judge should not be a silent and passive spectator; rather, the trial judge should "administer the law and guide the proceedings[.]" *Id.* And, the trial judge is vested with discretion to determine the conduct of the trial. *Id.*

Based on our review of the trial proceedings, it was clear that Hillard was both uncomfortable and angry at having his testimony impeached by counsel for Legna and Ilka. The trial judge, who is responsible for maintaining order in the courtroom, made various comments to Hillard to calm his emotional outbursts. Given the totality of the circumstances, we do not believe that the trial judge's comments were prejudicial or constituted an abuse of discretion. Consequently, we are unable to conclude that reversible error occurred.

Lastly, Legna and Ilka assert that the trial court erred by denying their motion for summary judgment and motion for directed verdict upon past medical expenses. Legna and Ilka maintain that their medical expert, Dr. Charles Gilliland, and Sharp's medical expert, Dr. Rick Lyon, agreed that Legna's past medical expenses ($7,775) and Ilka's past medical expenses ($7,365) were related to the motor vehicle accident. Nonetheless, Legna and Ilka argue that the trial court erroneously denied their motion for summary judgment and motion for directed verdict. Even though the jury ultimately awarded Legna and Ilka their past medical expenses, Legna and Ilka believe that the trial court's failure to grant the motions:

> undermined Plaintiffs' credibility and signaled to the jury that even uncontroverted issues should still be decided by them because even when the issue was agreed upon by experts for both sides as here, the jury should still decide the issue and potentially nullify in their verdict.

Legna and Ilka's Brief at 7.

The jury returned a verdict that awarded Legna and Ilka past medical expenses. So, any error by the trial court in denying the motion for summary judgment and the motion for directed verdict is most certainly rendered moot. Moreover, the jury is presumed to follow the law and instructions given by the trial court. *Jewish Hosp. & St. Mary's Healthcare, Inc. v. House*, 563 S.W.3d 626, 636 (Ky. 2018). Thus, we cannot conclude that reversible error occurred.

As noted, Sharp filed a protective cross-appeal. As we affirm Legna and Ilka's direct appeal (Appeal No. 2022-CA-0934-MR), the cross-appeal (Cross-Appeal No. 2022-CA-0971-MR) is rendered moot.

For the foregoing reasons, the judgment as amended by the Fayette Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Sandra M. Varellas
D. Todd Varellas
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLANT/CROSS-APPELLEE:

D. Todd Varellas
Lexington, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT:

Christopher R. Jenkins
Christopher S. Turner
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLEE/CROSS APPELLANT:

Christopher R. Jenkins
Lexington, Kentucky